COOPER v. SKEEL et al.

1. TRIAL ON APPEAL. Issues in equitable actions tried according to the first method prescribed by § 2999 of the Rev. of 1860, are reviewed in the Supreme Court de novo, and not upon a finding of facts and conclusions thereon.

2. TRUST: PAROL EVIDENCE. A trust may be established against the answer of a defendant in chancery, or a deed absolute on its face, by parol evidence; but such evidence when offered for that purpose will be received with great caution, and must be clear and conclusive.

*Appeal from Scott District Court.*

THURSDAY, APRIL 16.

IN April, 1858, complainant borrowed of respondent, Skeel, $500, and secured the same by deed of trust on eighty acres of land. The loan was for seven months, with interest at 25 per cent per annum.

When the note matured the time was extended for nine months, at the same rate of interest. The debt was not paid and the trustee sold the property to Skeel for $650. Complainant files this bill, setting up that after the property was advertised and before the sale, a verbal agreement was entered into by which he was to allow the property to be bid off by said respondent, and he, respondent, was to give complainant at least one year to redeem the same; that under this contract no opposition was made to the sale, no steps taken to pay the debt, and respondent bid in the property for the use and benefit of complainant; and averring that he has tendered the amount due, asks to redeem, and that respondent be decreed to execute the trust arising from said verbal contract.

The loan, the execution of the trust deed, the extension of the time of payment, the sale of the property and its purchase by respondent are all admitted; but the agreement to give time to redeem after the sale, is positively and emphatically denied. The cause was referred, and the

referee, after taking testimony, reported in favor of complainant. This report, after exceptions, was confirmed by the court. Respondents appeal.

*Davison & True* for the appellants.

*Lane & Skinner* for the appellee.

WRIGHT, J.— The issues in this case were tried according to the first method of equitable trials as contemplated by § 2999 of the Revision. And, therefore, though the referee reported the facts and the conclusions of law separately, his finding is not to have the effect of a special verdict. The case comes before us for examination *de novo*, upon the law and the facts as apparent of record. (§§ 2999, 3095, 3096.)

We are then to determine, as an original question, whether the testimony sustains complainant's bill. And when we say this, we mean of course, whether it is sustained upon the controverted points. And this inquiry may be confined to the leading and important proposition, affirmed on the one side and denied on the other, that appellant did, before the sale under the trust deed, enter into a contract with the appellee, whereby it was agreed that time should be given after the sale to redeem. And we feel bound to hold that the party affirming this proposition has not sustained it by proof.

In *Corbit* v. *Smith*, 7 Iowa, 60, it is said that when a party relies upon a parol contemporaneous agreement that a deed absolute on its face, was received as a mere mortgage, and that the right to redeem still remained, the proof should be clear, satisfactory and conclusive, and not made up of loose and random conversations; that all parol testimony, against the answer of respondent, to establish a trust or make an instrument absolute on its face a mortgage, should be clear, and even then received with great

caution. The same general principle is recognized in *Noel* v. *Noel*, 1 Iowa, 423.

That a trust may be established by parol testimony against the answer of a respondent in chancery, as also against the face of a deed, is not denied. And yet if the point were *res integra*, we should certainly strongly incline to hold that such evidence is too dangerous, and that it should be rejected. But in the language of another, we must not " be wiser than our predecessors " (Ambl., 409), and therefore submit to a rule which is well established upon authority, whatever the reasoning upon which it is based. Another proposition is, however, equally well established, and that is that such testimony is received with great caution. Its reception tends to perjury and renders insecure deeds and all paper titles. *Boyd* v. *McLane et al.*, 1 John. Ch., 582.

Now applying these rules, we repeat that the evidence in this case is too uncertain and dangerous to warrant us in divesting this title. The case stands in this attitude: The same answer of respondent denies in most emphatic and unqualified terms, the agreement. Both parties are sworn as witnesses. The complainant sustains the agreement, the respondent as clearly disproves it. Thus far, therefore, the case is unquestionably with respondent. But in addition to his own testimony complainant relies upon that of his son-in-law, one Craig, who it may be admitted for the present, substantially sustains him. An effort was made to impeach this witness, but as we feel clear in disposing of the case without examining this aspect of it we pass it without commentary, except to say generally, that his character for veracity has not been so assailed, by any means, as to justify us in disregarding his testimony. And in passing, we remark, that the same is more emphatically true of the attempt by each party to impeach the other.

But it is to be remarked that the witness, Craig, speaks entirely of certain conversations had with respondent, or admissions made by him. He was not present at the making of the alleged contract. He only professes to detail certain conversation, had with respondent sometime after the sale. Than this no species of testimony is more dangerous, or received with greater caution. In addition to this, it is certainly true, to say the least that his version of the transaction is presented in a confused and unintelligible form. Then again there was a subject matter to which all that was said by respondent, might apply, and the witness by a slight misunderstanding could very honestly refer it to the land in controversy.

For respondent admits, that he at the time was proposing at complainant's request, to advance some money to enable him to redeem another eighty acre tract, the title to which he was to take in his own name and give complainant one year, or longer, if possible, to redeem. This eighty adjoined the one covered by the trust deed and was a part of complainant's farm. And it is shown by both parties that some such negotiation was pending, about the time of these alleged conversations.

But aside from these considerations, there are undisputed facts that most clearly corroborate the testimony of respondent, and either entirely answer what is said by the witness, Craig, or leave the case so destitute of the requisite clear and satisfactory proof, that we could not grant relief to a party who affirms and must therefore satisfy the tribunal of his right to what he seeks. It seems that complainant had resided in Scott County for over twenty years and respondent but three or four, prior to the making of this loan. Up to this time they were strangers to each other. And though complainant, as he swears, felt and expressed himself at the time of the alleged contract that "it was trusting a great deal to a stranger," yet there was no

suggestion that the agreement should be reduced to writing, nor any reason shown or intimated why it was not done.

Then again after the sale, complainant and his wife, at respondent's request, voluntarily executed and delivered to him a quit-claim deed of the premises.   To explain the almost conclusive force of this act, he swears that respondent represented that it was necessary in order to make perfect and complete the title which he, respondent, would convey or make when complainant should redeem, or to perfect complainant's title.

The absurdity of such a thought is so patent that we can hardly believe that it would be suggested by one sensible man to another.   And if such conversation was had therefore, it would be more reasonable and consistent to apply it to the other eighty, which was quit-claimed by complainant at the same time, and which was to be conveyed to complainant's wife, daughter or other person as he might direct.

But in addition to this, while complainant was in possession of and living upon this eighty, before and after the sale, he, after executing this quit-claim, accepted from respondent a lease of the house and one acre of ground for one year.   About the same time, respondent entered upon the possession of every other part of the premises so purchased, with the knowledge and consent of complainant, and put his hands to work, cultivating the same, one or more of whom boarded with complainant.   To obviate the effect of this possession, it is claimed that the proof shows that respondent rented the same from complainant, agreeing to pay $300 rent or about six dollars an acre for the tillable land, and more if he raised more than an average crop.   The proof satisfies us beyond all fair room for doubt that this land was not worth to exceed three dollars per acre or $150 for the year, and we are very reluctant to believe that respondent would agree to pay double that sum. And we are especially thus reluctant in a case where it is

insisted by the party setting up such contract, that he is ignorant and illiterate, and his adversary shrewd and intelligent. There was no motive on the part of respondent for agreeing to give this exorbitant rent. And recurring again to the negotiation for the other loan, we can find perhaps a possible explanation of this $300 thought in the fact, that it was this sum that was to be advanced by respondent to redeem from the party who held the legal title. And it is more reasonable that witnesses have confounded the two transactions, than that respondent, without any perceptible motive would voluntarily obligate himself to pay double what the premises were worth. In this connection also, we remark that we give but little weight to the testimony of a witness (Pace), who speaks of a casual conversation had with respondent on this subject. There was nothing apparently to impress it particularly upon his mind, and it is so loose and indeterminate, that it should have but little, if any, influence when we are asked to disturb the title to real estate.

To sum up these facts then, we remark, that it is incredible that complainant should have made such a contract with a comparative stranger; that after this he should execute a quit-claim deed of the same premises, that he should have accepted a lease of a portion of them, and thereby recognized the adverse title, and his obligation as a tenant, that he should have permitted respondent to enter upon and take possession of the premises, when by the terms of the alleged contract, extending the right to redeem after the sale, complainant was to remain upon the premises using them as before; and that all this should be done without his asking, much less receiving, a word in writing recognizing his right to redeem. True, the testimony tends to show that complainant is illiterate and perhaps ignorant as a business man, but we cannot believe so much so as thus to take step after step which was effectually closing

the door against the very relief he asks, and which rendered more and more impossible his right to redeem. It does not appear that respondent made any particular misrepresentation, or used any fraudulent means to obtain his deed and possession, or in procuring complainant to accept the lease. These things were not done secretly, nor was any means employed to conceal their effect, or the object and purpose of respondent. Complainant was not dissipated, was neither old nor infirm, but in the full possession of his faculties.

And to disturb respondent's title under such circumstances, and divest it upon parol proof so inconclusive and so inconsistant with admitted facts — facts perfectly consistent with the title as we find it — would ignore the sanctity justly and necessarily due and thrown around a legal title by the whole theory and policy of the law. The decree is therefore reversed and the bill dismissed.