William McGinnis, et al., Appellants, v. Mary Jane McGin-
nis, et al., Appellees, and Morton Utter as Adminis-
trator of the Estate of Eliza J. McGinnis, Deceased, In-
tervener, Appellant.

**Gifts:** PRESUMPTION: RESULTING TRUSTS: EVIDENCE. From a mere
1    showing that a mother furnished her daughter the money with which
     to purchase land, the presumption arises that the transaction was
     a gift or advancement; and the burden of overcoming this pre-
     sumption and establishing a resulting trust in the land is upon
     the party asserting the existence of a trust. Evidence in this case
     is held insufficient to overcome the presumption of a gift and to
     establish a resulting trust.

**Evidence:** TRANSACTIONS WITH A DECEDENT. It is only a party inter-
2    ested in the event of the suit who is incompetent to testify to
     transactions with a decedent. Thus in a suit by an heir to estab-
     lish a trust in land, based on the claim that the ancestor paid the
     purchase price while the title was taken in the name of another
     child, another heir was competent to testify to transactions be-
     tween the deceased ancestor and the grantee.

**Constructive trusts:** EVIDENCE. The fact that a mother and daugh-
3    ter lived together and defrayed their personal and family expenses
     from a joint bank account, it not appearing that the daughter ex-
     ercised any control over the actions or was the adviser of her
     mother, was not sufficient to establish a constructive trust in land
     purchased with funds belonging to the mother, the title to which
     at her request was taken in the name of the daughter, it not
     appearing that any fraud was practiced by the daughter.

**Trial:** CONTINUANCE: ABSENT WITNESS: DISCRETION. The continu-
4    ance of a cause is largely a matter of discretion; and where the
     application was made on the eve of trial, based on the absence of
     a non-resident witness, with no showing of an effort to take his
     deposition, and his deposition had been taken by the adverse party,
     refusal to grant the continuance was not an abuse of discretion.

*Appeal from Superior Court of Shenandoah.*—Hon. George
H. Castle, Judge.

Thursday, January 16, 1913.

Action in equity to declare and establish a trust. The material facts will be found stated in the opinion. The trial court found for the defendants, and from this decree plaintiffs and intervener appeal.—*Affirmed.*

*Earl R. Ferguson* and *C. R. Barnes,* for appellants.

*Denver Wilson* and *Thos. W. Keenan,* for appellees.

Weaver, C. J.—The principal parties to this action are the children and heirs at law of Eliza J. McGinnis, deceased, who died intestate in January, 1911. After the death of said deceased her daughter Mary Jane McGinnis, holding title to a certain farm conveyed it to one Rolf. Thereupon plaintiffs, sons of the deceased, claiming that their said sister had held the land in trust for Eliza J. McGinnis, began this action in equity to have the said trust judicially established and impressed upon the moneys received in consideration for said conveyance. Upon trial to the court the plaintiff's bill was dismissed, and from that decision they appeal. The theory of the appellants is that their mother furnished a large part of the consideration for the land in question, and that the title was taken by Mary Jane under circumstances equitably impressing it with a resulting or constructive trust in favor of her mother in proportion to the contribution by the latter to the purchase price. They further allege facts tending to show that the said Mary Jane took said title under an express agreement of trust whereby she was to hold the same during the life of her mother, and, upon the death of the latter, to distribute the trust property to her heirs.

Counsel upon either side have favored the court with unusually extensive briefs stating very many propositions of fact and of law, and citing and quoting in support of their

several positions some hundreds of authorities and precedents from this and other courts. The very wealth of argument and citation thus presented is somewhat embarrassing, for it is manifestly impossible within the allowable limits of a written opinion to consider separately all the points made in the briefs and discuss the bearing thereon of all the many authorities cited to our attention, while anything less than this is likely to impress counsel with the thought that their presentation of the appeal has not been given the consideration it deserves. We have endeavored, however, to read the arguments and abstracts with care to arrive at the real merits of the dispute between the parties, and we think the essential issues can be disposed of without unduly extended discussion. As we view the case, the real controversy is one of fact rather than one of law. Decisions of fact issues are rarely of importance as precedents, for each case is quite sure to be more or less effected by circumstances and conditions peculiar to itself, and it is quite as apt to mislead, as to aid, a litigant who relies upon it as authority in another case. We shall therefore content ourselves with a statement of our conclusions without setting out or discussing in detail the evidence on which they are based.

It is shown that Eliza J. McGinnis was a widow; that she died without will; and that all her heirs are parties to this proceeding, though but three of them unite as plaintiffs and appellants. At the time the alleged trust is said to have been created, the husband of Mrs. McGinnis had been dead for a considerable period, and his estate had been settled and distributed to his widow and heirs as provided by law. All of her children, except her daughter Mary Jane, had left the maternal home and gone out to make their own way in the world. Mrs. McGinnis was then possessed of about $6,000 in money deposited in bank and for which deposit she held certificates. In July of the year 1907 she entered into a written contract with one Carpenter for the purchase of the farm in question at the agreed price of $18,000; conveyance to be

made on March 1, 1908.   Before the contract matured, Mrs.
McGinnis appears to have cashed her certificates of deposit
and turned the money over to her daughter, who deposited it
in her own name.   At the request of the mother, Carpenter
conveyed the land to Mary Jane, who made to him a cash pay-
ment of about $9,000 and secured the remainder by making
or assuming a mortgage on the land.   The money which had
been transferred from Mrs. McGinnis to Mary Jane was
doubtless used by the latter in making up the cash payment
to Carpenter.   In the management of the farm thus purchased,
Eliza J. McGinnis took a more or less active part, and some
of her conduct relating thereto, and some of the statements
alleged to have been made by her to some of the witnesses,
are consistent with plaintiffs' theory that she claimed to be
the beneficial owner of the property; but, as we shall here-
inafter note, they are not necessarily inconsistent with ap-
pellee's theory that she herself became and was the owner of
the property both in law and equity, subject only to an obliga-
tion to support and care for her mother.   In September, 1910,
and during the lifetime of her mother, Mary Jane entered into
a contract to convey the land to one Rolf for the agreed con-
sideration of $19,105.   After the death of the mother in Jan-
uary, 1911, Mary Jane executed and delivered a deed to Rolf
pursuant to her agreement.   It was then this litigation took
form, and by agreement of the parties, or by order of the
court, the cash payment made by Rolf was placed in the hands
of a trustee to be held to abide the result of the suit.

I.   It must be conceded, we think, that payment by a
mother of the purchase price of land conveyed by a third
person to her daughter, or the furnishing of money by mother
to daughter for the purchase of land, is not in
itself sufficient to make the latter a trustee of
the title for the benefit of the former, nor is
it sufficient even to create between them the relation of debtor
and creditor.   Upon such a showing alone the law presumes
the money to have been paid or furnished by the parent as

1. GIFTS : pre-
sumption : re-
sulting trusts:
evidence.

a gift or advancement to the child. Counsel for appellants admit the general rule as stated, but insist that in this case there is sufficient showing that the appellee stood in such relation of special trust and confidence to her mother that the burden is upon her to show that the transaction was a gift or an advancement, and that the same was fairly obtained without fraud or undue influence. We are quite clear that the record does not support this claim. It is true the daughter lived with her mother, and they appear to have maintained a common or joint bank account from which their personal and family expenses were defrayed. There is nothing to show that the daughter was at that time the business adviser of her mother or manager of her affairs or exercised any control over her actions. Indeed, if the testimony has any bearing in either direction upon this point, it tends rather to indicate that the mother was the managing and controlling factor in their family and business relationship.

So, too, it may be said that the charge and claim that appellee acquired the title by fraud or deception practiced upon her mother is without any fair support in the evidence, and can only be inferred by attributing an evil purpose to conduct which is entirely consistent with the theory of good faith on her part. The burden is therefore upon the appellants to overcome the presumption of gift or advancement.

For this purpose reliance is chiefly placed upon the alleged conduct of the mother and daughter with respect to the property and upon certain statements attributed to the mother by some of the witnesses. It is said, as we have before suggested, that the mother was the active manager of the land and took a principal part in renting it and offering it for sale. But there is nothing in this showing which conclusively sustains the theory of ownership on her part. She was the mother of the appellee, and, as we have said, the managing factor of the little family. She had advanced a large share of the cash payment, and, according to appellee's showing, was to have a life interest in, or at least a life support

from, the property which she had enabled her daughter to acquire. It was therefore not an unnatural thing that she should have and exercise a prominent part in directing the use of the land or in offering it for sale.

Concerning the statements said to have been made by Mrs. McGinnis of her intent or purpose in directing Carpenter to convey the land to Mary Jane, the evidence is even less persuasive. But one witness testifies, with any degree of positiveness, to statements made at the time of the transfer which are clearly inconsistent with the appellee's claim. Without in any manner impeaching the good faith of that witness, it may be said that the interest or bias manifested by him is such as to materially diminish the weight and value of his testimony, and we are not disposed to say that his version of the case shall be given effect against the clear preponderance of all the other evidence in favor of the appellee.

Again, the statements of the deceased, as shown by the appellants, were all in her own interest and made to third persons, while on the part of appellee numerous witnesses

2. EVIDENCE: transactions with a decedent.

testify to the oft-repeated assertions on her part that the rest of the children had received their full share of her husband's estate; that the money she herself received was hers to do with as she pleased; and that she had given it all to Mary, who was to keep her during the remainder of her life. This theory of the matter is also supported by the positive testimony of Joseph McGinnis, whose financial interest in the controversy is identical with that of appellants, who swears that he was present and saw his mother count the money out and give it to his sister, who undertook to complete the contract with Carpenter and to give her mother a home during life. This evidence the appellants seek to exclude because of the witness' interest in the litigation. The statute making a witness, interested in the event of the suit, incompetent to testify to conversations or transactions between himself and a deceased person is quite clearly not here applicable. The transaction

of which the witness speaks was one between the deceased and her daughter alone, and, so far as shown, he had no voice or part therein. He was not incompetent to testify and, unless we are to find him unworthy of belief the gift, to appellee is fairly established. We see no good reasons to discredit him. The decree of the trial court in this respect has the support not only of the presumption in favor of a gift or advancement, but of a preponderance of the evidence as well.

II. It follows from the foregoing that appellant's claim of a resulting trust cannot be sustained. None of the elements of a resulting trust are found in the record, even though we accept as literal truth all the evidence offered

3. CONSTRUCTIVE TRUSTS: evidence.

in support of the petition. Stated in the strongest terms of which it will reasonably admit, it shows no more than the fact that Eliza J. McGinnis directed Carpenter, with whom she had made the contract of purchase, to convey the land to Mary Jane, and that the latter paid for the land in part with money furnished her by the former. Had the relationship of parent and child not existed between them, and Mrs. McGinnis had herself paid the purchase price from her own funds, taking the title in the name of Mary Jane McGinnis, it might well be held that a trust resulted. But the relation admittedly did exist. Moreover, Mrs. McGinnis did not pay the purchase price. It was paid by the grantee. The books will be searched in vain for any rule or principle upon which it can be said that A. becomes the equitable owner of land conveyed to B. simply because he advanced or furnished B. money with which to make the purchase. If we correctly apprehend the position of appellants, they do not strongly insist upon the theory of a resulting trust, but contend rather that the evidence makes a case of constructive trust, or trust *ex malefico,* having its origin either in fraud or in circumstances of such character that its denial by the appellee would itself amount to a fraud. As we have already said, the evidence, as we read it, wholly

fails to prove that appellee in any manner overreached or defrauded her mother in the transaction. The property was the mother's to give or withhold as she might deem best. It was not an unnatural thing that she should prefer the daughter, who remained with her in her widowhood, over the children who had gone out for themselves, nor is there anything in the record to show that such preference was unjust. But, even if unjust in a moral sense, she did not exceed her legal right, and it is not the province of this court to control her discretion in the disposition of her own estate.

But counsel say that, if appellee by her promises, representations, and agreements, made with a secret intent not to carry them out, obtained the property from her mother, she will be estopped to rely upon the rule which invalidates express trusts not evidenced in writing, and will be held as the trustee of a constructive trust. All this may be admitted for the purposes of the case before us, but we must still say that no state of facts has been established calling for an application of the rule. Indeed, with slight exceptions, there is little room to differ with counsel upon the legal propositions so elaborately argued in their briefs, but, as we have repeatedly indicated, we must hold that appellants, upon whom lies the burden of proof, have failed to make sufficient proof of the essential allegations of their petition, and the superior court properly denied the relief demanded.

III.   Some complaint is made of the trial court's refusal to grant a continuance on the motion of the applicants. The motion was made on the eve of trial upon the ground of the absence of Carpenter, the grantor of the appellee, who was said to be a material witness for the plaintiffs. The showing of diligence in procuring the presence of the witness, who was a nonresident, was by no means strong. No attempt had been made by plaintiffs to obtain the witness' deposition in their behalf, and his deposition had in fact been taken on behalf of the defense,

4. TRIAL: continuance: absent witness: discretion.

The court was within the limits of its discretion in denying the continuance.

No good ground appears for disturbing the decree of the trial court, and it is therefore *Affirmed.*