LEONARD BOMBEI et ux., appellees, v. IRA J. SCHAFER, appellant.

No. 47871.

(Reported in 47 N.W.2d 842)

MAY 8, 1951.

T. A. Michels, of Washington, and Edward L. O'Connor, of Iowa City, for appellant.

Louis J. Kehoe, of Washington, for appellees. ·

SMITH, J.—On January 16, 1947, these parties entered into written contract by which plaintiffs sold and agreed to convey to defendant a certain farm adjoining one already owned by defendant. The contract provided for a conveyance and "abstract of title showing merchantable title of record * * * free from encumbrance." A down payment of $5000 was made leaving $20,987.50 of the agreed purchase price to be paid on or before March 1, 1947.

On March 3, 1947, when the parties met to complete the transaction, plaintiffs tendered abstract and a deed subject to a railroad right of way and "to all easements and rights of way affecting said real estate." Defendant objected to a telephone easement shown on the abstract.

The meeting was held in the office of defendant's attorney, now deceased. Besides the three parties and this attorney there was at first present plaintiffs' agent, Breitenbaugh, who had negotiated the sale, and later plaintiffs' attorney, who represents them on this appeal, was brought in. The parties and Breitenbaugh all testify to what took place there.

All agree defendant objected to the telephone easement and at first proposed to withhold $1000 of the balance of purchase price. Later he reduced the amount to $500, signed and delivered a check for $20,387.50 ($100 additional was withheld on account of some formal abstract defects, later corrected, and the $100 has since been paid) and received a warranty deed that recited payment of the full $25,987.50 original agreed purchase price.

Plaintiffs plead the $500 was withheld "fraudulently, without any just reason or excuse" but the pleading makes clear they delivered the deed and accepted the check for the reduced amount. The present suit is in equity for specific performance but there is a suggestion in defendant's answer that there was either a former action at law or that the present case was commenced as

a law action. The record however makes no explanation. The record does show a demand by defendant for jury but no ruling. No reason for the request in an equity case is offered.

The suit as it stands is based on the contention there was made at the time the deal was closed an oral agreement that the $500 was withheld conditionally, subject to a later court decision as to the validity of defendant's objection; and it is claimed the deed was delivered and the check accepted by plaintiffs on that understanding.

Defendant denies there was such an understanding and claims the whole controversy was finally and completely settled for the $500 withheld.

The trial court held with plaintiffs, awarded them judgment against defendant for $500, and he appeals.

I. The appeal at this point involves a fact question upon which plaintiffs had the burden of proof. Marsh v. Pilcher Hdw. Co., 190 Iowa 592, 180 N.W. 648; 15 C. J. S., Compromise and Settlement, section 51b (page 776); 1 C. J. S., Accord and Satisfaction, section 48a (notes 29 et seq., page 559). They and their agent, Breitenbaugh, tcs'ified to the alleged oral understanding. Plaintiff Leonard Bombei said defendant first wanted to hold back $1000 but "I said I wouldn't settle that way. I wan'ed all of it and he finally agreed to take $500 off if I would settle that way. I said that I wanted all that the contract called for. * * * so I finally went over and got Mr. Kehoe [plaintiffs' attorney] to come over and we talked awhile * * * I told Mr. Shafer I wouldn't consent to take off $500 and he didn't want to agree * * * I told him * * * if the court decided he should pay the $500 he was to pay it. If not, that he wasn't. He said he didn't want to do this and wouldn't do it so I told him if he would give me a check, we would leave the court decide, so he said he would give me a check for $20,387.50 and I told him that I would do that under one condition, that I would take off the $500, the $100 for railroad right of way that was on the farm and I was to get the $100 when I gave him the abstract to it and he was to give me the $500 if the court decided he was to pay. That was under these conditions that he gave me the check and then I gave him the deed and abstract under that condition."

We have quoted at some length from this plaintiff's somewhat confused testimony as to the alleged oral understanding. Evidently the testimony was not all that was confused. Mrs. Bombei, the other plaintiff, testifying to substantially the same general effect, was asked: "Q. Was there anything said by Mr. Bombei at the time *he gave that check to Mr. Shafer* [sic]? A. Well, he said he would settle this on the condition if Mr. Shafer would give us the money and the court decide on it and he would give him the deed. Q. And with that understanding you saw them exchange the deed and the check? A. That is right." After the last quoted answer was in defendant objected to the question "as wholly incompetent, irrelevant and immaterial, leading and suggestive and wholly improper." There was no motion to strike and no ruling.

The testimony of Mr. Breitenbaugh consisted principally of his own conclusion and understanding that "they made a settlement all but $500" which "was to be determined later by the court." There was a motion to strike the quoted language "as a pure conclusion and volunteer statement * * * and not in answer to the question as to what was said by the parties."

Defendant testified he objected not only to the easements (railroad and telephone) but also to plaintiffs' removal of hog houses, chicken house and oil furnace—"At first I refused to take it [the deed] and demanded $1,000 and then in order to settle the thing up I told them I would compromise with them on $500."

During the negotiations the deed came into defendant's hand and Breitenbaugh had the check defendant had signed for $20,387.50. Just how this came about is not clear. Defendant stated: "I had the deed in my hand and threw the deed on the table and demanded my money back. * * * They didn't answer on that. There was nothing said for a long while * * * Breitenbaugh didn't give me back my check." Defendant testified Mr. Kehoe said, " 'You have got the deed and abstract and Mr. Bombei has got the check' "; and that as plaintiffs and Kehoe walked out of the office the latter said, " 'Bombei *you* can sue on it if *he* wants to.' [sic] * * * Q. After you threw the deed and the abstract down on the table and demanded your money

back, did Mr. and Mrs. Bombei make any further statements about going to court? A. No."

.It appears without denial Breitenbaugh, who drew the check that *was* signed and delivered by defendant also, during the negotiations, drew another one for $500 that defendant *refused* to sign. That represents the only suggestion of written evidence of the claimed condition to the settlement and it was rejected by defendant. Had it been signed by defendant and placed in escrow the matter would have been beyond controversy. His failure to sign it is significant.

The testimony on behalf of plaintiffs is vague and unsatisfactory. It does not indicate whether plaintiffs were to bring action for the unpaid $500 or defendant was to bring suit to compel removal of the title defects complained of or a judicial pronouncement of the validity of his objections.

We have set out a fair summary of the evidence. Unfortunately we do not have any version from the attorneys present and there is no mention made of anything said or done by defendant's attorney in whose office the transaction took place.

We attach significance to the fact, however, that attorneys representing both sides were present. The parties were closing a $25,000 deal. They were exchanging papers that were, on their face, unconditional and absolute. It seems incredible that if there was some understanding denying what the written documents clearly imported neither attorney thought it necessary to put it in writing.

With due respect to the judgment of the experienced trial judge, and in spite of the numerical preponderance of witnesses for plaintiffs we cannot escape the conclusion that plaintiffs have failed to carry the burden they have assumed. None of the witnesses was entirely disinterested. Had there been an agreement to the effect that what appeared final was not final—that the parties contemplated future litigation to settle what they were apparently settling between themselves—it would have been easy and lawyerlike to have made a written memorandum to that effect.

We are not passing on the merits of the controversy between the parties at the time the deal was closed; but as to defendant's right to object to the telephone easement notwith-

standing he knew the telephone was there, see McGowen v. Myers, 60 Iowa 256, 259, 260, 14 N.W. 788. Nor are we saying there could not be a conditional exchange of papers under an agreement varying their original terms. But we think such a conditional closing requires more definite and certain proof than appears here. The case is one in which equity should hold the parol evidence, necessary to contradict the import of what the parties actually did and the terms of the instruments they exchanged, should be something beyond a mere preponderance. 32 C. J. S., Evidence, section 1023, page 1060; Anderson v. Aetna Life Ins. Co., 193 Iowa 1037, 1039, 188 N.W. 883; 20 Am. Jur., Evidence, sections 1252, 1253. A party seeking to establish a fact in opposition to written evidence must make out his case with more than usual clearness. 32 C. J. S., Evidence, section 1033. Even positive testimony of witnesses may be overcome by facts and circumstances and inherent improbabilities attending the transaction. Garretson v. Harlan, 218 Iowa 1049, 1056 et seq., 256 N.W. 749; Chidester v. Harlan, 180 Iowa 171, 187, 188, 159 N.W. 659.

II. Defendant complains of the disallowance of his counterclaim or cross-petition demanding judgment for the value of certain items removed by plaintiffs from the premises after the written agreement was made. He contends the portable hog houses, frame chicken house and oil furnace and heating system were a part of the real estate—appurtenant to the premises within the meaning of the written contract.

That the items were removed is conceded. Whether their removal constituted a violation of the contract need not be determined here. Defendant had knowledge of the facts when the deal was closed. He testified that at the time of closing, "I also objected to the sale of the hog houses and removal of the chicken house and the oil furnace in the house that was taken out." Knowing this, he delivered the check and accepted the deed.

Certainly, if as defendant argues and as we hold, the parties made an unconditional settlement on March 3, 1947, defendant cannot be permitted to litigate these matters now. Knowing the facts, he is as completely bound as are plaintiffs under the showing made, whether he objected or not. Citation of authority upon this proposition is not necessary. What is sauce for the goose is

sauce for the gander. If plaintiffs cannot upset the settlement to receive their $500, surely defendant cannot disavow it to recover his $3000.

III. Defendant filed his answer and cross-petition January 23, 1950. Plaintiff filed reply and answer to cross-petition September 9, 1950, over seven months later. On September 11 defendant filed motion to strike reply and answer to cross-petition because not filed within seven days as provided in Rule 85(c) R. C. P., 58 I. C. A. 36.

It may be conceded the long delay in filing reply was in shocking and unexplained disregard of a rule designed to speed up the machinery for administering justice. Had a motion for default been filed within a reasonable time after the expiration of seven days the rule could have been permitted to serve the purpose of its adoption.

But no such move was made by defendant. He acquiesced in the long delay during which the case was dormant. He made no effort to invoke the rule until the damage was done and after reply was actually filed. The blame for delay in disposing of the case must be shared by both, if not equally, at least jointly.

The purpose of the rule is not to enable defendant to profit by a long delay during which it was being violated with his acquiescence, but to give him (and the court) a weapon by which he could have prompt trial and disposition of his case. Manifestly he was not being damaged by the delay.

We think the rule is designed for the benefit of the court in the prompt administration of justice and litigants who are interested in co-operating to that end; not for defendants who acquiesce and then seek to profit from its violation.

The court did not abuse its discretion by overruling the motion to strike. City of Des Moines v. Barnes, 237 Iowa 6, 20 N.W.2d 895.

The judgment for $500 is reversed and the judgment disallowing defendant's counterclaim affirmed, costs on appeal to be equally divided.—Reversed in part and affirmed in part.

WENNERSTRUM, C. J., and BLISS, OLIVER, GARFIELD, MULRONEY, HAYS, and THOMPSON, JJ., concur.

MANTZ, J., not sitting.