HOWARD FREDERICK et ux., appellees, v. ROBERT L. SHORMAN, defendant, YVONNE SHORMAN, defendant-appellant.

No. 52136.

DECEMBER 13, 1966.

Edgar L. King and G. K. Thompson, both of Cedar Rapids, for defendant-appellant.

Fred C. Fisher, Jr., of Cedar Rapids, for appellees.

MASON, J.—Hilda Frederick, principal plaintiff, seeks to enjoin Yvonne Shorman, principal defendant, from attaching certain real estate and for a declaratory judgment that Robert L. Shorman, also a defendant, Yvonne's former husband, had no interest in the premises or in the alternative that plaintiff and her present husband, Howard Frederick, have a lien on Robert's interest (for purchase, improvement, repairs and taxes) superior to the attachment lien.

From decree determining that Robert had no interest in the real estate subject to attachment and permanently restraining Yvonne from proceeding with attachment and levy, she appeals.

Since the real contest is between Hilda and Yvonne the former will be referred to as plaintiff and the latter as defendant.

I. Yvonne held a judgment against Robert, her former husband, for child support. Robert had record title to a joint tenancy in real estate consisting of a residence property in Cedar

Rapids, with his mother, plaintiff Hilda Frederick. This property was purchased in 1950 but the title was taken in the joint names of Hilda Bjornsen, plaintiff's maiden name, and her son, Robert. Hilda paid the entire consideration. The deed conveying the property reads:

"[We] hereby SELL AND CONVEY unto Hilda H. Bjornsen (unmarried) and Robert L. Shorman (unmarried), Mother and Son, as joint tenants and not as tenants in common, with the full right of the survivor to take the whole title and right of property to both in fee simple and absolutely."

Robert later married Yvonne, and his mother married her co-plaintiff, Howard Frederick. A child, Roberta, was born to Robert and Yvonne; later they were divorced and a judgment for child support was entered against Robert. He failed to pay, Yvonne obtained an execution on the judgment and levied upon his interest in the realty.

Thereupon plaintiffs brought this action. Upon trial the court held that since Robert contributed nothing to the purchase price of the property or its upkeep he had no interest and entered the decree from which this appeal is taken.

Plaintiff pleaded "The purchase of the property was for the purpose of making and establishing a homestead for plaintiff and her son and under an agreement with her son, Robert, that he would continue to reside in said premises and would contribute from his (Robert's) funds and earnings, a sum equal to ½ of the purchase price and further sums equal to ½ of the upkeep, taxes and maintenance of the home," and she and Howard Frederick made substantial and valuable improvements in the premises, paid all taxes, insurance and repairs.

II. Defendant assigns three propositions relied on for reversal: The court erred (1) in failing to find a completed gift from Hilda to her son; (2) in finding Robert had no interest in the attached real estate; and (3) in giving consideration to a letter as having probative force to which objections had been made that it was incompetent, irrelevant and immaterial.

Defendant contends under her first assignment the court overlooked the fact there was a gift of an interest in real estate and Robert's failure to contribute to the purchase price is of

no significance since consideration is not requisite to a valid gift; the question is the extent of the interest conveyed as a gift; and plaintiff failed to show the transfer in the form contained in the deed, supra, was not a gift.

Plaintiff, on the other hand, asserts the gift theory is raised for the first time on appeal; it was not considered by the trial court because, among other things, defendant failed to plead it.

Defendant replies this is a matter of general defense; since the deed is regular on its face, the burden is on plaintiff to prove by clear and convincing evidence that the grantees were not equal joint owners; plaintiff is attempting to overcome a presumption arising from the record title; the issue made by plaintiff's petition was that her son had no interest in the property; it was as much plaintiff's duty to negative an interest arising through gift as through purchase; since Robert paid nothing toward the acquisition or improvement of the house, his interest, if any, must have been acquired by gift.

Plaintiff pleaded a special contract to the effect that at the time she purchased the property she had an agreement with her son that he would repay her for the half interest he acquired under the deed, which agreement he failed to carry out. By commencing this action she took the burden of proving Robert had no interest in the real estate which could be reached by defendant's writ of execution.

III. "The legal or equitable nature of a declaratory judgment proceeding is to be determined by the pleadings, the relief sought, and the nature of each case." Henderson v. Hawkeye-Security Insurance Co., 252 Iowa 97, 100, 106 N.W.2d 86, 88.

This action is equitable in nature and is so treated here. The court gives weight to the findings of the trial court but is not bound by them. Rule 344(f)(7), Rules of Civil Procedure.

Under a general denial defendant may prove anything tending to show plaintiff's allegation is untrue. Thus in an action to recover property based on a superior right or title proof of a gift to defendant may be made under a general denial. 38 C. J. S., Gifts, section 64.

■ If an unqualified transfer to the donee is proved, one asserting the delivery was made on some condition or trust has the burden of establishing such condition or trust. 38 C. J. S., Gifts, section 65.

■ Plaintiff is required to carry the burden on this issue by a preponderance of the evidence, " '* * * but this is not a fixed or unvarying standard. What would be sufficient to constitute a preponderance of the evidence and to sustain a judgment in an ordinary case might not suffice in another, where, in addition to the burden resting upon plaintiff in any case, particular presumptions are to be overcome. This is especially true where a plaintiff seeks by parol evidence to overcome the presumptions arising from the express terms of a conveyance, or from the relations of the parties concerned therein. * * * The very terms of the conveyance are evidence, and must be overcome. Hence, much more certainty and conclusiveness are requisite than in ordinary cases.' " Hein v. W. T. Rawleigh Company, 167 Neb. 176, 183, 92 N.W.2d 185, 190.

■ To sustain this burden plaintiff is required to overcome certain rebuttable presumptions. First, a deed is presumed to be that which it purports to be and the burden is on the one asserting otherwise. When a deed sufficient to vest title is executed and delivered, the law raises the presumption of an intent to pass the title in accordance with its terms and the burden rests on the one who avers a different intention. 26A C. J. S., Deeds, section 181. Second, there is a presumption that joint tenants hold in equal shares. 48 C. J. S., Joint Tenancy, section 6. Third, where a parent causes a deed conveying land by a third person to be placed in the names of a parent and a child and the parent furnishes the consideration, the law presumes a gift by the parent or advancement to the child. McGinnis v. McGinnis, 159 Iowa 394, 397, 139 N.W. 466, 467; 6 Thompson on Real Property (1962 Replacement), section 3129.

■ In fairness to the trial court it should be noted that this "gift" defense was apparently not asserted at trial, and for that reason presumably not considered by it. But the issue does inhere in defendant's denial and thus presents a question of law

we believe should be considered. In considering this matter as proper subject for argument here we recognize the validity of plaintiff's statement that had it been raised at trial the record might well have been made factually more complete.

Defendant's position is fairly simple. She contends that considering the foregoing rules of construction Robert was still shown to be the owner of a beneficial half interest because the evidence fails to rebut a completed gift by mother to son. She concedes she can reach by her execution only the interest Robert has in the property and she does not claim to be in the position of an innocent purchaser for value.

Plaintiff is attempting to change or overcome the presumption arising from the terms of the deed she caused to be executed and delivered.

It requires less positive and unequivocal testimony to establish a gift from mother to her children than it does a gift between persons not related and in cases where there is no suggestion of fraud or undue influence, very slight evidence will suffice. Love v. Francis, 63 Mich. 181, 29 N.W. 843, 847, 6 Am. St. Rep. 290. That a gift may be established by proper evidence, even when supported only by parol testimony, see Belgard v. Belgard, 202 Iowa 1356, 1357, 212 N.W. 116, 117. Consideration is not necessary to support a gift; after delivery—which in the instant case was by the execution and recording of the deed—the gift is irrevocable except, of course, upon mutual agreement of the parties. Stonewall v. Danielson, 204 Iowa 1367, 1371, 217 N.W. 456, 458.

As stated, plaintiff pleaded there was a special agreement between Robert and herself whereby he should repay to her half the property costs. She made no attempt to prove this and rested her case on the claim she intended something squarely contrary to the terms of the deed, which she has never asked to be reformed. Her pleaded case was that she intended Robert should have a half interest in the property for which he owed her half the purchase price and upkeep; she sought to prove she never intended Robert should be the owner of any interest until her death.

She said: "I was unmarried at the time I purchased the property, and he was my only child, so naturally I put the house in his name, only if something would happen to me he would get the house. It was vice versa. * * * At the time I bought the property at 1015 Staub Court I told my son I was putting it in his name in case something happened to me, in case I was married."

Plaintiff does not claim there was any mistake in the deed, or any fraud or duress leading to its execution. It was drawn exactly as she ordered. She contends its only effect is to create a right of survivorship.

When one attacks a deed such as this in an attempt to show it does not properly express the real intent of the grantor, either by an action for reformation on the grounds of mistake, fraud, duress or the like, or to prove a resulting trust, the burden thus assumed is always a heavy one requiring the stated quantum of proof. This is particularly so when the deed is carefully drawn and solemnly executed and acknowledged before a notary. The presumptions of validity and regularity attaching to such a document require clear and convincing evidence to preponderate against them. Bingaman v. Bingaman, 85 Neb. 248, 122 N.W. 981, 983. A party seeking to establish a fact in opposition to written evidence must make out his case with more than usual clearness. Bombei v. Schafer, 242 Iowa 619, 625, 47 N.W.2d 842, 845, citing 32 C. J. S., Evidence, section 1033.

The intent sought to be reached is plaintiff's intent existing at the time she caused the deed to be executed. Baker v. Normanoch Assn., Inc., 25 N. J. 407, 136 A.2d 645, 651; 26 C. J. S., Deeds, section 83; Brown v. Crozer Coal & Land Co., 144 W. Va. 296, 107 S.E.2d 777, 786; Cronkhite v. Falkenstein (Okla.) 352 P.2d 396, 398. It was some 15 years after execution of the deed before plaintiff made any attempt to impeach it. She now says it was her intention only to create a right of survivorship in her son without giving him any other interest. Without joint tenancy there could be no such right. She does not deny intending to create a joint tenancy. She attempts to contradict the effect of the deed.

To hold that the written document meant anything different from what the parties expressed therein requires evidence which is clear, satisfactory and convincing. McKenney & Seabury v. Nelson, 220 Iowa 504, 506, 262 N.W. 101, 102.

Plaintiff testified she had made the same arrangements, a joint tenancy title, in regard to an automobile and perhaps nine $75 bonds; that she turned the automobile and four of the bonds over to defendant at the time of his divorce. She admitted referring to the property as "our house" and did not deny defendant's testimony that the property was always referred to between Robert and her as "our house."

Defendant testified plaintiff told her she and Robert could move into the house if he wanted to and plaintiff would buy another house. Plaintiff did not deny this testimony. Defendant also testified Robert told her in plaintiff's presence that he owned the house, referring to 1015 Staub Court.

It is our opinion plaintiff has failed to sustain her burden by sufficient evidence of the character and weight required; that the "gift theory" was properly before the court and the court erred in finding defendant had no interest whatsoever in the real estate.

What has been said with regard to defendant's first assignment applies with equal force to defendant's second assignment.

IV. The court erred in permanently restraining defendant from proceeding with attachment and levy in the cause referred to in the trial court's judgment.

"The individual interest of one joint tenant is subject to levy and sale upon execution against him. Such interest may be sold without making the other coparceners parties to the action. The levy and sale operate as a severance of the joint tenancy, and the purchaser at the sale becomes a tenant in common with the other coowners. The mere filing by a creditor of a joint tenant of a memorial of his judgment in the registrar's office prior to the death of the joint tenant, judgment debtor, does not operate as a severance and the survivor takes the whole free from the lien of the judgment, in the absence of any other steps taken by the creditor to sever the title. A joint tenancy is severable upon the voluntary or in-

voluntary conveyance or seizure of the interest of either tenant and upon such severance the joint tenancy is turned into a tenancy in common." 4 Thompson on Real Property (1961 Replacement), section 1780.

"During the continuance of a joint tenancy, each joint tenant has a liability to have his fractional interest taken for the satisfaction of his debts. Any such taking, when completed, works a severance of the joint tenancy. Thus a judgment creditor must not only levy on the land, but sell it, and have any redemption period expire, before the severance is completed." 4 Powell on Real Property, section 618.

We agree a joint tenant's creditors can, by proper action brought before the joint tenant's death, reach the interest or title to the property held in joint tenancy. Of course, such interest cannot be reached after the joint tenant's death.

We hold Robert became vested with an interest in the real estate when the joint tenancy was created. Having determined in Division III, supra, that plaintiff failed to overcome the presumption of a gift to her son and the presumption that she and her joint tenant held their interest in equal shares, Yvonne has the right as Robert's judgment creditor to proceed with her levy.

V. Defendant's third assignment raises the question of the sufficiency of a general objection to predicate error.

The court in its findings of facts found when Robert learned of his mother's marriage to Howard Frederick in 1955 he wrote her a letter, saying "have the house put in his name." This letter and a letter to plaintiff's attorney written prior to trial were offered by plaintiff as admissions against Robert, who was in default and not called as a witness in the trial.

Defendant contends his objection that the letters were incompetent, irrelevant and immaterial was sufficient to direct the court's attention to their defects.

These letters were clearly hearsay as to Yvonne and do not come within any exception to that rule.

"It is elementary that an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible. The court should not be left to speculate as to whether

the evidence is in fact subject to some infirmity which the objection does not point out.

 "In Jackson v. Chicago, Milwaukee, Saint Paul & Pacific Railroad Co., 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, we said: 'Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious.'" Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 180, 181.

See also Lende v. Ferguson, 237 Iowa 738, 749, 23 N.W.2d 824, 830, 831; Floy v. Hibbard, 227 Iowa 149, 151, 287 N.W. 829, 830; International Harvester Co. v. Chicago, M. & St. P. Ry. Co., 186 Iowa 86, 94, 95, 172 N.W. 471, 475.

Although the defects to the offered exhibits are obvious and ordinarily could not be eliminated, a specific objection would have obviated the problem. We have given no weight to either of these letters in this de novo review.

VI. We find no merit in plaintiffs' claim for alternative relief.

The matter is therefore remanded with instructions to dissolve the injunction and to enter declaratory judgment in accordance with this holding.—Reversed and remanded.

GARFIELD, C. J., and LARSON, SNELL, MOORE and STUART, JJ., concur.

BECKER and RAWLINGS, JJ., dissent.

THORNTON, J., not sitting.

BECKER, J.—It is relatively recently that joint tenancy has come back into vogue. See 51 Iowa Law Review 582 where a study of over 10,000 deeds in five counties indicates the use of joint tenancy arrangements in over 50 percent of the current real-estate transfers. See also Joint Tenancy in Iowa, 34 Iowa Law Review 41, for historical review of our changing concepts of joint tenancy law. The recent growth of the use of such deeds occurred after 1930.

The same problems are present in allowing parol evidence to ascertain the intent of the parties in connection with joint

tenancy deeds as are present in applying rules to deeds conveying common tenancy, sole ownership or other interest in real estate. Sinclair v. Allender, 238 Iowa 212, 222, 26 N.W.2d 320, 326, we quote: "Cooper v. Skeel, 14 Iowa 578, 580 ('That a trust may be established by parol testimony * * * against the face of a deed,' is not denied. And yet if the point were *res integra,* we should certainly strongly incline to hold that such evidence is too dangerous, and that it should be rejected. * * *)" On such assertions the whole body of resulting trusts in real-estate transactions has been developed. It is the intent of the party that controls. Where it is shown that the contributions were unequal (here the plaintiff contributed all funds), it is presumed that the parties intended to share in proportion to the amount contributed to the purchase price. Williams v. Monzingo, 235 Iowa 434, 16 N.W.2d 619, 156 A. L. R. 508; Culp v. Price, 107 Iowa 133, 77 N.W. 848; Cotton v. Wood, 25 Iowa 43; Keokuk Savings Bank & Trust Co. v. Desvaux, 259 Iowa 387, 143 N.W.2d 296.

It is recognized that the plaintiff's case was pleaded somewhat ineptly and it might well have been amended to conform to the proof, but this gift theory was not urged until this appeal. The essence of plaintiff's case is found in the following quotation: "I was unmarried at the time I purchased the property, and he was my only child, my only heir, so naturally I put the house in his name, only if something would happen to me, he would get the house. It was vice versa. Now, if something happened to him, so it would be protected to a certain point." Conceivably there are other statements in the record that do not exactly square with this statement of intent. However, it is submitted that a great deal of this confusion in the witness' mind grows out of a layman's lack of appreciation of the technical effect of joint tenancy deeds. It is obvious that the trial court after reviewing the record as a whole believed the foregoing statement of the plaintiff. We again fail to give weight to the trial court's factual findings.

Basically the protest in this dissent is that in refusing to give credence to the plaintiff's expression of intent we fail to recognize the facts surrounding the transaction, and what people

are in fact doing with their property in this day and age.

The property was acquired as a homestead and subsequently used as such. The son was not living with the mother and never did live at the homestead (except for visits) since acquisition. The son contributed nothing to upkeep, taxes, maintenance or repair. No delivery (other than presumptive delivery due to recording the deed) was ever shown. While much of this evidence goes to facts occurring after the transfer, it corroborates the expression of intent as of the time the house was transferred. There is no evidence of a different intent. The contrary theory grows out of the series of presumptions. See Restatement of the Law, Trusts 2d, sections 442, 443:

"Section 442. Purchase in the Name of a Relative. Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.

"Section 443. Rebutting the Presumption of a Gift to a Relative. Where a transfer of property is made to one person and the purchase price is paid by another, and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, and the latter manifests an intention that the transferee should not have the beneficial interest in the property, a resulting trust arises."

See also Shelley v. Landry, 97 N. H. 27, 79 A.2d 626, which reaches a result that is far more realistic.

After giving due consideration to the factual situation, we should conclude that plaintiff's testimony that she had her son's name placed on the deed "only if something happened to me" is acceptable. The trial court believed plaintiff. The Judge of that court was in a better position to weigh the evidence.

As noted in the 51 Iowa Law Review article, supra, over 50 percent of the deeds examined for the purposes of that article were joint tenancy deeds. It is submitted that the vast majority of these deeds (particularly those not involving husband and wife) have the same purpose and the same intent as expressed

by this plaintiff. She had the transaction completed while she was single and had a living son. It is inherently probable that she wanted to keep her own homestead during her life but she wanted her son to take the property at her death. It is inherently improbable that plaintiff intended to make a present, gift or advancement of one-half interest in her homestead that would expose her to the very calamity that now befalls her.

It is inconceivable that the bulk of the people who are using joint tenancy deeds in relation to homesteads intend to convey any present property right other than a survivorship right to take effect at death. It may well be that individuals acting in this manner should employ the knowledgeable background and sophisticated techniques of attorneys. The fact is that they do not always do so.

Plaintiff testified here that she did intend her son to have beneficial interest to take effect on her death. I would hold with Shelley v. Landry, supra, that Robert L. Shorman holds the joint tenancy interest in the property for the benefit of his mother during her lifetime. His right to the property in the event his mother predeceases him is a valuable legal right which is subject to attachment, and, if necessary, sale on execution.

This is not an easy area of the law but it is submitted that this type of decision will cause continued trouble in the future because it is unrelated to reality. I believe that plaintiff's son did get an interest to take effect at his mother's death, and would accordingly modify and remand.

RAWLINGS, J., joins in this dissent.