Marion RANDOLPH, Appellant,

v.

Myrtle WEST and Helen V. Olson, Appellees.

Myrtle WEST, Appellee,

v.

Marion RANDOLPH, Appellant.

No. 52933.

Supreme Court of Iowa.

May 7, 1968.

Life, Davis & Life, Oskaloosa, for appellant.

Barnes & Schlegel, Ottumwa, for appellees.

BECKER, Justice.

The cases appealed involve ownership of 25 acres of land in Wapello County. Marion Randolph, hereafter referred to as plaintiff, filed his action to quiet title to the land against Myrtle West, hereafter referred to as defendant, and Helen Olson, an original vendor of the property. Helen Olson is a nominal party only and has no real interest in the outcome of the case. Defendant Myrtle West commenced a separate forcible entry and detainer action against Marion Randolph. Her petition involves the same property. The cases were consolidated for trial. After trial, the decree quieted title

in defendant and ordered writ of ouster against plaintiff. We affirm.

Plaintiff claims title to the land under the will of his father George Randolph. Mr. Randolph, and defendant Myrtle West were married September 17, 1946 and divorced September 11, 1948. After the divorce in the fall of 1948 Mr. Randolph and defendant resumed their relationship and lived together until the fall of 1949. They were not remarried.

During the post divorce period while still living together Mr. Randolph and defendant entered into a written land contract on April 2, 1949 to purchase the property in question from Oscar B. Olson and Helen V. Olson. The pertinent parts of the contract are:

"This Agreement, * * * between Oscar B. Olson and Helen v. Olson, husband and wife, * * * and George B. Randolph and Myrtle E. Randolph, with full right in survivor * * *.

"It is understood that the deed shall convey to above parties as joint tenants with full right to survivor solely."

The couple occupied the premises until autumn when defendant left Mr. Randolph for the second time. She later remarried and had no further connection with the property until after Mr. Randolph's death September 26, 1966.

Mr. Randolph remained on the premises. In 1950 plaintiff and his family moved onto the small farm with his father and remained there until 1962. He helped clear the land and plan improvements on it. On May 25, 1951 decedent George Randolph made a will which, after token bequests to his other children, devised all the remainder of his estate to plaintiff. The will has been admitted to probate.

Plaintiff also produced substantial evidence to indicate decedent wanted and expected plaintiff to get the farm after his death.

Decedent completed payments required by the land contract but did not actually take delivery of the deed. Mr. and Mrs. Olson executed a warranty deed conveying title to "George B. Randolph and Myrtle E. Randolph, as Joint Tenants with Full Rights of Survivorship, and not as Tenants in Common." This deed was held with the abstract by a local abstracter who certified it had been delivered to him by Mrs. Hollis Horrabin, widow of the lawyer for the vendors. About July 25, 1963 when full payments had been made on the contract the abstract was continued to date and delivered to Mr. Horrabin. The abstract bill was not paid. When Mr. Horrabin died in 1965 the abstract and the deed were returned to the abstracter who held both until this litigation arose. He then delivered the deed to the clerk of court.

Thus at his death, decedent had completed the land contract payments but had not received the deed which was made in accordance with the contract. The trial court held there was clear and satisfactory evidence decedent wanted his son, Marion, to have the farm but the contract of purchase clearly evidences an intent to create a joint tenancy. We agree.

■ I. In In re Estate of Miller, 248 Iowa 19, 22, 79 N.W.2d 315, 318, we said: "[T]he presumption is that any instrument, whether pertaining to realty or personalty, in which two or more persons are grantees, or payees, creates in them a tenancy in common in the absence of expression of a contrary intent. * * * Of course, language creating a joint tenancy in a written instrument gives the grantees, or payees, the rights of joint tenants. The most important and well established of these is the right of the survivor to take the whole property."

Here the language in the contract to purchase real estate was clearly sufficient to justify the conclusion a joint tenancy was contemplated. Compare In re Estate of Martin, Iowa, 155 N.W.2d 401, Andrew v. Citizens State Bank, 205 Iowa 237, 216 N.W. 12, In re Estate of Miller, supra.

II. Frederick v. Shorman, 259 Iowa 1050, 147 N.W.2d 478, 483 states: "When one attacks a deed such as this in an attempt to show it does not properly express the real intent of the grantor, either by an action for reformation on the grounds of mistake, fraud, duress or the like, or to prove a resulting trust, the burden thus assumed is always a heavy one requiring the stated quantum of proof. This is particularly so when the deed is carefully drawn and solemnly executed and acknowledged before a notary. The presumptions of validity and regularity attaching to such a document require clear and convincing evidence to preponderate against them. Bingaman v. Bingham, 85 Neb. 248, 122 N.W. 981, 983. A party seeking to establish a fact in opposition to written evidence must make out his case with more than usual clearness. Bombei v. Schafer, 242 Iowa 619, 625, 47 N.W.2d 842, 845, citing 32 C.J.S. Evidence § 1033.

"The intent sought to be reached is plaintiff's intent existing at the time she caused the deed to be executed. (cases cited)"

There is no evidence that *at the time the contract to purchase was executed* the parties intended anything other than relationship imported by the words in the contract. This conclusion is verified by use of a joint tenancy deed signed by the vendors and delivered to their lawyer. It is a fair inference the deed was to be delivered to the vendees when the abstract bill was paid.

The trial court expressed belief the result here did not comport with decedent's desire formed after decedent's former wife left him. This is probably true. But decedent did nothing to change the form of ownership of the property. Absent such action the property devolves by contract (and by the subsequently executed deed which the trial court ordered delivered to defendant) and not by will. Hyland v. Standiford, 253 Iowa 294, 111 N.W.2d 260.

Affirmed.

All Justices concur.