### MARY STROUP, Appellant, v. A. F. BRIDGER et al.

**Trover and conversion:** PARTIES. In an action for the recovery of
1 property and the conversion thereof, all persons claiming the same should be made parties.

**Reference:** WAIVER. Error in referring a cause for trial is waived
2 by objecting to an offer to set aside the reference and demanding a decision on the report.

**Gifts:** INTENT OF DONOR. A gift, to be effectual, must be fully exe-
3 cuted, and is a question of fact depending materially upon the intent of the donor.

**Reference of causes.** Where the report of a referee, as a whole, has
4 been set aside, the court has no authority to try the issues of fact,

but should again refer the case if the parties agree, or submit the issues to a jury.

**Conversion:** DAMAGES. Where the ownership of property is in dispute, and the one in possession does not claim title and has done nothing amounting to an appropriation, refusal to deliver possession, even to the true owner, amounts to no more than a technical conversion for which there can be only nominal damages.

*Appeal from Keokuk District Court.*— HON. J. ·T. SCOTT, Judge.

TUESDAY, JUNE 14, 1904.

THIS suit was originally brought against the defendant Bridger alone, alleging the conversion of certain promissory notes. Thereafter the court ordered the plaintiff to make the heirs of John Stroup, her deceased husband, parties defendant, which was done. The defendant Bridger answered, disclaiming any interest in the notes or in the proceeds thereof, further than the amount necessary to compensate him for his services and to reimburse him for necessary expenses in connection therewith, and alleging that the heirs named as necessary defendants claimed to be the owners of the notes and to have delivered them to him, and that such was, in truth and in fact, the case. He prayed that the respective rights of the plaintiff and his co-defendants be determined without prejudice to him. The heirs who were made defendants were a son, Charles Stroup; five daughters, Margaretta Stroup, Belle Boram, Ida Bridger (the wife of the defendant Bridger), Gertrude Logan, and Lizzie Jackson; and fourteen grandchildren, whose mothers were dead. The daughters, Lizzie Jackson, Belle Boram, and Gertrude Logan, and one of the granddaughters, entered a disclaimer of any interest in the suit. The son, Charles Stroup, the daughter Ida Bridger, and seven of the grandchildren answered, alleging that the notes in controversy were given absolutely to themselves and the other heirs by the plaintiff, and were by them delivered to the defendant Bridger. After the issues were settled, the

cause was referred to W. D. Howard " to take the evidence, and report the same, with a finding of facts and conclusions of law." The report was excepted to by all parties. The exceptions of the appellant and Bridger were overruled, those of the other answering defendants were sustained, and the report was set aside and judgment rendered for them. The plaintiff appeals.— *Reversed.*

*Bowen & Brockett* and *J. P. Talley,* for appellant.

*D. T. Stockman,* for appellee Bridger.

*D. W. Hamilton,* for the other appellees.

SHERWIN, J.— The appellant is the widow of John Stroup, who died in November, 1894, leaving a will by which he devised all of his property to her, consisting largely of notes and bank stock. Mr. Stroup was the sole owner of a bank at Richland, and the defendant A. F. Bridger, who was his son-in-law, was its cashier and principal manager; having an interest in the profits of the business. Mr. Stroup made many personal loans, and the notes taken therefor by him were kept in his private safe in the bank, separate and apart from the evidences of indebtedness belonging to the bank proper, in which Mr. Bridger was interested. About a month after the death of her husband, the appellant concluded to make a division of at least a portion of her personal property among her children and grandchildren, so that she might be relieved of the care and responsibility of the same. Pursuant to this plan, four of her daughters, Mr. Taylor, a son-in-law, and the defendant Bridger, met at her house, where the personal notes of Mr. Stroup, amounting to about seventy thousand dollars, were taken by Mr. Bridger for division. Before the division was begun, it was suggested that twenty thousand dollars of the property be retained by the appellant for her individual use; but to this she replied that such sum would be more than she would need unless her son, Charles

Stroup, who was then supposed to be dead, should be living and return, in which event she would give him his share of the property from the twenty thousand dollars retained by her. The appellant then designated certain notes which she wished to retain for personal reasons, and they were separated from the others and laid aside. She then left the room, whereupon the others proceeded to examine and divide the notes and other personal property belonging to her. About sixteen thousand dollars in value in bank stock, notes, and cash was set apart for the appellant, and the rest of the good notes were divided into seven packages. Notes were found amounting to over four thousand dollars which were thought not to be worth par, and they were laid by themselves. After the division had been completed, the appellant was called into the room, and, at the request of one of the daughters, she handed to each of her children present a package of notes. To one of her daughters she also delivered a package for an absent daughter, and to John N. Taylor, a son-in-law, she handed a package for the four children of her deceased daughter. The remaining package of the seven she stated that she would keep herself for the children of the other deceased daughter. Nothing was done with the package of culls or rejected notes at this time. All of the notes which were delivered to the several parties, except those given to Mrs. Bridger, were then indorsed by the appellant without recourse; Bridger declining the indorsement on the notes handed to his wife. A record of the transaction was made in a book, showing the contents of each of the packages of notes, and the name of the party receiving them. A list of the rejected notes was also entered in the same book, and Bridger receipted therefor in the book as follows: "Received the above notes for collection, marked 'no protest.' When the above notes are collected, or any part thereof, the proceeds of the same are to be divided so as to make a division of the notes given by Mary Stroup to her heirs even, and when enough more is collected to purchase watches and give each grandson not receiving a

watch fifty dollars, balance to be divided equally between the heirs." And this book was left in the appellant's possession. Upon leaving the room, Bridger took with him the notes which had been set apart for the appellant, and the package of rejected notes. He held possession of all of these notes until February 15, 1895, at which time the appellant took from him the notes which were conceded to belong to her, and demanded of him the possession of the package of rejected notes; but these he refused to deliver to her, claiming that they were to be held by him for the purpose stated in his receipt therefor. Shortly after this, Charles P. Stroup, the missing son, returned; and the appellant, in accordance with the understanding at the time of the distribution, turned over to him within about seven hundred dollars of enough property to make his gift the same as that to each of the other children, which was approximately $9,000, and this additional sum was paid to him by Bridger, at the request of the appellant, from the proceeds of the rejected notes. The contest between the parties hereto is over these rejected notes; the appellant claiming that she never parted with the title thereto; and that the refusal to surrender them to her upon demand was a conversion thereof, and the contesting defendants, other than Bridger, claiming that all of the rejected notes were given to the children at the time of the distribution heretofore referred to.

The case illustrates the danger which is often present, however well concealed, when a generous and loving parent undertakes the distribution of his or her estate during life to donees who are grasping, unmindful of the benefits already bestowed, and willing to demand and take the last ounce of flesh, no matter what the consequences to their donor; and, were the case before us for disposition on its merits, we would have no serious difficulty in checking the rapacity of the appellees. It comes to us, however, for the determination of legal propositions, and we now proceed to their consideration.

Bridger did not claim the title to, or any interest in, the notes in controversy. The receipt which he gave for them recited that their proceeds were to go to the children and grandchildren of the appellant, and if it was true that she had then made a valid gift thereof to the parties named, and they were delivered to Bridger by them, he was under no obligation to surrender them to the appellant. Therefore, when the appellant began this action against him, for their conversion, we think it was right to require her to make the parties claiming the notes defendants, to the end that the question of ownership might be fully and finally determined without a multiplicity of suits. It was in fact the only question to be determined, and Bridger should not have been called upon or required to defend in as many suits as there were claimants. Code, sections 3462, 3466; *Fowler v. Doyle,* 16 Iowa 534; *Shear v. Green et al.,* 73 Iowa, 688; *Litchfield v. County of Polk,* 18 Iowa, 70. In *Kelly v. Ins. Co.,* 82 Iowa, 137, there was an assignment of the contract of insurance to the plaintiff, and several grounds of defense to the action on the policy were interposed. The sole question in the case was not to whom the money should be paid.

1. TROVER AND CONVERSION: parties.

This case should not have been referred, but the error was waived when the court offered to set aside the reference, and the appellant objected thereto, and insisted upon a decision on the report.

2. REFERENCE: waiver.

The referee found that the notes were the property of the appellant; that there had been no conversion thereof by Bridger, but that he had made certain disbursements from the proceeds of those collected, which had been acquiesced in by the appellant; and he recommended that the balance of the cash collected and the remaining notes be turned over to her. She excepted to the finding of no conversion and as to disbursements, and to some other minor details, and asked the court to render a money judgment in her favor for the value of the notes as shown by the evidence, or, in lieu thereof, that the case be again referred for a specific finding as to whether

there was a completed gift of the notes in question at the time of the division.  The answering defendants, except Bridger, excepted to the "report and findings by the referee that the plaintiff, Mary Stroup, on the 11th day of December, 1894, did not make an absolute gift of the notes in controversy," because not supported by the evidence.  They also asked that the report be set aside so far as it found, as matters of fact and law, that there had been no gift of the notes, and for a judgment notwithstanding the referee's conclusions of law.

To be effectual, a gift must be fully executed; and the question whether or not there has been a gift in a given **3. Gifts:** case is one of fact, in which the intent of the al- **intent of donor.** leged donor in delivering the property is a very material inquiry.

The referee reported, in effect, as a matter of fact and law, that there was no gift; and this finding of both law and **4. Reference** fact was excepted to by the appellees, and the **of causes.** court was asked to set aside such findings, and this it seems to have done.  The appellees argue that it was not set aside as to the facts, but the judgment, in substance, recites that, after an examination of the testimony, the appellees' motion, and exceptions to the report of the referee, and their motion for judgment notwithstanding the report, are sustained, and the report of the referee set aside.  When the report as a whole was set aside, the court had no right or authority to try the issues of fact, and should either have referred it again, if the parties so agreed, or submitted the issues to a jury.  *Lyons & Cooney v. Harris et al.,* 73 Iowa, 294.  The case does not fall within the rule announced in *Sage v. Nichols,* 51 Iowa, 48, and in *In re Assignment of Hooker & Son,* 75 Iowa, 377, where the facts were correctly found, and the reports were allowed to stand as to them, but different conclusions of law were reached by the trial courts on the facts.

There was no conversion of the notes by Bridger.  He

asserted no claim to them himself, nor· did he do anything
**5. CONVERSION:** in·reference to them amounting to an·appropria-
**damages.**     tion of them to his own or ·the appellees' use.
He was indifferent between the parties, and gave the appel-
lant his reason for not delivering them to her upon her de-
mand; and this reason, as we have heretofore seen, was a valid
one. *Doolittle & Sherman v. Shaw,* 92 Iowa, 348; *Cutter v.
Fanning,* 2 Iowa, 580. " The refusal to surrender possession
in response to a demand is not in itself conversion. It.is only
evidence of a conversion." *Cooley on Torts,* 454. And,
where the facts justify a temporary delay after demand as
" where, in good·faith, the possessor questions the authority
or ownership of the person demanding." Bishop on Noncon-
tract Law, section 406; *Singer Mfg. Co. v. King,* 14 R. I.
511; *Churchill v. Welsh,* 47 Wis. 40 (1 N. W. Rep. 398).
And see *Colby v. Kimball,* 99 Iowa, 321. In any event, a re-
fusal to deliver upon demand would be a technical conversion
only and entitle the true owner to nothing more than nominal
damages. *Churchill v. Welsh, supra.*

This case should be retried, and it is reversed and re-
manded.— REVERSED.