In Re the ESTATE OF HARRY WEARIN, Deceased, MARY JONES, Appellant.

**Evidence:** TRANSACTIONS WITH A DECEDENT.  A widow claiming to be
1  the owner of certificates of deposit endorsed and transferred to her
by her deceased husband, was competent to testify to the time she
first saw them in the possession of her husband, and that shortly
afterward they were in her possession duly endorsed.

**Gifts inter vivos:** INTENT.  Whether there has been a gift in a given
2  case is a question of fact, depending largely on the intent of the
alleged donor in delivering the property.

**Same:** INDORSEMENT AND DELIVERY OF NEGOTIABLE INSTRUMENTS:
3  EFFECT.  The indorsement and delivery of bank certificates of
deposit raises a presumption of intention to transfer the title to
the party to whom they were delivered.  Thus where a husband
indorsed certificates and delivered the same to his wife shortly
preceding his death, and she thereafter remained in possession of
the same until she presented them for collection, there was pre-
sumptive evidence of a transfer of the title, which is not over-
come in this case.

*Appeal from Mills District Court.*—HON. O. D. WHEELER,
Judge.

SATURDAY, NOVEMBER 28, 1914.

ACTION tried by agreement as in equity to determine the
ownership of two certificates of deposit.  The widow had pos-
session of the certificates, which were properly indorsed in
blank by the person to whom they were payable.  The trial
court refused to order the  widow to turn the certificates over
to the administrator; holding that the evidence did not over-
come the presumption arising from the indorsement and the
possession.  Petitioner, Mary Jones, appeals.—*Affirmed.*

*Genung & Genung,* for appellant.

*Tinley, Mitchell & Pryor,* for appellee.

PRESTON, J.—Mary Jones, one of the heirs of Harry Wearin, deceased, for herself and the other heirs, filed her application for order, stating, in substance, that prior to the death of Harry Wearin he was possessed of and owned two certificates of deposit; that the widow, Mamie Wearin, obtained possession of said certificates a few hours before the death of deceased, and at a time when he was wholly incompetent to transact business; and that the purpose and intent of the widow in obtaining said certificates was to deprive the children of deceased, his heirs, of their interest therein, and asked that, upon examination, the widow be directed by summary order to turn the certificates over to the administrator.

The widow filed objection to the application, stating, substantially, that she was the owner of the certificate; that the money described therein was her property; that the deposit was made in the name of Harry Wearin and by him indorsed and delivered to her; that the deposit was made by Harry Wearin of funds belonging to deceased, and the defendant; that upon the receipt of said certificates, or shortly thereafter, deceased indorsed them in blank and, immediately upon the indorsement thereof, delivered the certificates to defendant, thereby giving and transferring to her all his right, title, and interest therein; that at his death he had no right, title, or interest therein; that they had been fully delivered by him, with the purpose and intention that the title should pass to defendant. This paper seems to have been treated as an answer to the application, and the widow will be considered as defendant.

Thereafter it was agreed by the parties that the matter should be heard by the court and treated as an action in equity, and, if the court should find that the property was not the property of the widow, the court should have the power and right to order her to turn the certificates over to the administrator; and it was further agreed that the applicants are not limited to the examination of the widow alone, but may call other witnesses, the widow having the same privilege.

The widow produced two certificates of deposit. One of them is as follows:

$500.00.                          Malvern, Ia., April 18, 1912.

This certifies that Harry Wearin has deposited with First National Bank five hundred dollars, payable to the order of self six or twelve months after date, with interest at the rate of 4 per cent. per annum for the time specified only, on the return of this certificate, properly indorsed. Not subject to check.

[Signed by the Cashier.]

The other certificate is in the same form, except that it is dated September 25, 1911, and is for $1,649. The certificates were indorsed, "Harry Wearin. Mamie Wearin."

As we understand the record, the widow indorsed the certificates at the time they were cashed by her at another bank than the one which issued them.

The trial court found, among other things, that soon after the certificates were issued they were indorsed by deceased and delivered to his wife, and that ever since said indorsement and delivery she has retained possession thereof; that the possession of said certificates, duly indorsed, is *prima facie* evidence of ownership; and that such presumption has not been overcome by the evidence in the case.

Harry Wearin died May 16, 1912. He was 79 years of age. For a few days before his death he was quite feeble; as one witness puts it, they had to turn him from one side to the other; that he could not move.

The evidence is very brief. The substance of it is that the certificates were presented to the Silver City State Bank May 15, 1912, by the widow, who received the money thereon. They were presented to the First National Bank of Malvern May 17, 1912, in the ordinary course of business. This was the day after the decease of Harry Wearin.

The cashier of the Silver City Bank testified as to the genuineness of the signature of deceased on the back of these certificates, and stated that he did not think a man could

have written the name there 24 or 48 hours before his death and make his signatures as smooth as they appeared on the certificates.

Witness Maas testified that about two days before the death of Wearin he had a talk with Mrs. Wearin about the certificates; that witness was sitting near Wearin's bed; that Mrs. Wearin moved up close beside him and said that her husband had about $2,100 in the bank, and she did not know how to get it out, and wanted him to go down to Silver City for her, to see what was the way to get it. He says:

They was not signed. Q. What did you hear Harry Wearin say to his wife about some papers in a drawer? A. She said: 'All right, Uncle Harry. Everything is all right. I can't find the key. The key is lost.' The talk about the key occurred the day he died. Q. Mr. Maas, at the time you were there, on the day before Mr. Wearin died, and at the time she said the certificates were not indorsed, tell the court what she said about her being Harry Wearin's wife, and what she wanted done with the money. A. She didn't say very much. She said—you know, she thought she ought to have it all. She was Harry Wearin's wife, and she ought to be entitled to all of it, and she wanted it.

The widow testified that she was married to deceased about nine years; that he was confined to his bed about two weeks before he died. She testified, over objection as to the competency of the witness, that she saw the $1,649 certificate in the hands of deceased September 26, 1911, and that she next saw it on the same day in her own hands; that she first saw the $500 certificate on April 19, 1912, and immediately thereafter saw it in her hands; that she kept the two certificates after they were in her hands in her purse. She testified that she was acquainted with her husband's signature and that the signatures on the back of the certificates were his. She testifies that there was some talk about a key when Maas was there, and that she said the key was misplaced, and she did not know where she put it; that this was a key to the

bureau drawer; that the two certificates of deposit were not in the drawer, but were in her pocket; that, after her husband was sick in bed, the two certificates were continuously in her purse until they were taken to the Silver City Bank. She testifies that in the conversation with Maas the word "indorse" was not mentioned.

I. The testimony of Mrs. Wearin, in which she testified that the first time she saw these certificates was a day or so

1. EVIDENCE: transactions with a decedent.

after they were issued and saw them in the hands of her husband, and shortly thereafter they were in her own hands, is competent, under the ruling in *Campbell v. Collins*, 133 Iowa, 152.

II. In her answer, or the paper filed by the widow, denominated objection to application, she claimed that the deposit for which the certificates were issued was made by deceased of funds belonging to deceased and the defendant, but there is no evidence of this, and her counsel now claim that the evidence and circumstances are sufficient to show a gift *inter vivos*.

The trial judge heard the witnesses, and while, in an equitable action, his findings are not conclusive upon appeal, yet, because of his better opportunity to judge the matter,

2. GIFTS INTER VIVOS: intent.

we ought to and do give weight to his conclusion. The question whether or not there has been a gift in a given case is one of fact, in which the intent of the alleged donor in delivering the property is a material inquiry. *Stroup v. Bridger*, 124 Iowa, 401, 407.

Counsel for appellant say there are inconsistencies in the evidence of Mrs. Wearin, and seek to draw inferences therefrom against her present contention. While the evidence is

3. SAME: indorsement and delivery of negotiable instruments: effect.

meager, we are satisfied that the trial court was justified in finding that the certificates were delivered to the defendant soon after they were issued, and, being regularly indorsed, the law presumes deceased intended to transfer to her the title by such indorsement and delivery; that her possession

of the certificates, duly indorsed, is *prima facie* evidence of ownership; and that such presumption has not been overcome by the evidence.

Appellant cites *In re Brown's Estate*, 113 Iowa, 351. In that case the certificate was in the name of both husband and wife, and there was no indorsement of the certificate. The court held that the simple holding of the certificate, without indorsement, was not sufficient, saying:

This indicates no intention to part with the title or control during life. If not, then the transaction fell short of a gift, as there was no present delivery. True, the certificates were placed in the wife's keeping, but not with the purpose of transferring title. Each still had the right to draw the money.

In *Union Trust & Savings Bank v. Tyler*, 161 Mich. 561 (126 N. W. 713, 137 Am. St. Rep. 523), the question was in regard to a bank book. It was indorsed on the bank book, in substance, that, after the holder of the bank book died, the property was to be the property of her daughter, naming her. The other evidence was such that the court held that the money passed, and in the case it was said:

In order to constitute a gift, there must be an actual transfer by the donor of all right and dominion over the thing given.

We do not understand appellee to contend that this is not a correct statement of the law. The rule was so stated in the case of *In re Brown's Estate, supra.*

Appellant also cites *Beaver v. Beaver*, 117 N. Y. 421 (22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531), upon the proposition that, to constitute a valid gift, there must be on the part of the donor an intent to give, and delivery of the thing given, to or for the donee, in pursuance of such intent.

*Evans v. Higgins*, 70 W. Va. 640 (74 S. E. 909), is also cited as holding that a wife acquires no title to personal prop-

erty given to her by her husband, not evidenced by deed or will, possession whereof was delivered to her at their place of residence. But the decision in that case was based entirely upon the statute of the state of West Virginia.

Appellant cites, also, *Title Co. v. Ingersoll,* 153 Cal. 1 (94 Pac. 94). That mere possession of the property of the husband is not sufficient to show a gift, and the burden of proof is upon him to show the same.

Appellee cites cases from other states holding that a valid gift of a promissory note, or similar instrument, may be made by simple delivery, without indorsement. This may be, and probably is, true, if it is made to appear that it was the intention of the donor to transfer the title. Some of the cases so cited are *Grover v. Grover,* 24 Pick. (Mass.) 261 (35 Am. Dec. 319); *Hatcher v. Buford,* 60 Ark. 169 (29 S. W. 641, 27 L. R. A. 507); *Bond v. Bean,* 72 N. H. 444 (57 Atl. 340, 101 Am. St. Rep. 686); *Blazo v. Cochrane,* 71 N. H. 585 (53 Atl. 1026); *Gale v. Drake,* 51 N. H. 78; *Brown v. Mausur,* 64 N. H. 39 (5 Atl. 768); *Smith v. Meeker,* 153 Iowa, 655. In the last case it was said:

A delivery of certificates of stock into the hands of an intended donee, with the purpose of at once transferring to him the right of ownership in such stock, is sufficient to consummate a gift thereof, although no transfer is recorded on the books of the corporation.—(Citing Tucker v. Tucker, 138 Iowa, 344.)

Our negotiable instruments act (section 3060-a30, Code Supp. 1907) provided that a negotiable instrument payable to order is negotiated by the indorsement of the holder, completed by delivery.

In *King v. Gottschalk,* 21 Iowa, 512, the court said:

Let it be granted that under our statute the wife's choses in action do not, by mere operation of law, either pass to her husband or authorize him, against her consent, to sue upon them either in his own name or in their joint names; still she

can give and deliver them to him, and this would authorize him to sue in his own name. [Citing cases.] Being in possession of the note, suing upon and producing it upon the trial, this was *prima facie* evidence of the plaintiff's ownership of the note, and sufficient evidence, if nothing further was shown, to justify a recovery upon it.

Though that case did not involve the question of a gift, it has a bearing upon the point being now considered.

In *Bigelow v. Burnham,* 90 Iowa, 300, it was held that plaintiff's petition contained an unanswered allegation showing how she derived title to the note, and said:

> If she had simply averred her ownership and possession, and claimed the amount due thereon, it would have been a sufficient allegation of her title; and, the note being in her possession, the presumption of the law would obtain, until rebutted, that she was the owner of the instrument. [Citing cases.] . . . As the defendant introduced no evidence to overcome the presumption of ownership which arises from the possession of the note, plaintiff's case, as to title to the note and right to sue thereon, was established *prima facie* by her introduction of the note in evidence.

In that case the note was payable to bearer, and the action was in equity.

But some of the cases cited were law actions and the notes payable to order. See *Rubey v. Culbertson,* 35 Iowa, 264, where it was held:

> The plaintiff's possession of the note was *prima facie* evidence of his ownership, entitling him to recover in the absence of any evidence rebutting it. Possession being *prima facie* evidence of title, the plaintiff was not required to prove the same by a written assignment. He could have crossed out the assignment on the back of the note and read it in evidence.

But it is unnecessary to determine the point in this case whether delivery alone is sufficient, for the reason that the two certificates of deposit in question were not only delivered into the possession of Mrs. Wearin, but they were regularly

indorsed. We have, then, in this case, the presumption which arises from the possession of the note, and this possession strengthened by the fact that the donor indorsed it. The certificates themselves provide that upon surrender, properly indorsed, the funds are obtainable. Deceased must have known this because it was a part of his contract with the bank issuing the certificates. With this knowledge in his possession, Mr. Wearin indorses the certificates of deposit and turns them over to his wife. The wife has possession of them from that time on. Prior to his death, she takes them to the Silver City State Bank for payment, or rather for collection. All Mr. Wearin could possibly do to enable any person to realize upon said certificates, first, was to indorse them, and, second, to deliver them to the person he desired to collect the money. This, we think, shows an intention on the part of Mr. Wearin to transfer the title. If he had simply desired to leave the certificates in safe keeping for his own use, he could have done so without indorsement. He did not need to indorse these certificates of deposit until he intended to cash them, or intended some other person to cash them.

From what has been said, it follows that the trial court rightly decided the issue, and its judgment is therefore— *Affirmed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.