UNITED STATES of America, Appellant,

v.

Harry SCHROEDER, Amanda Schroeder, Richard Schroeder and Jacqueline L. Schroeder, Appellees.

No. 17794.

United States Court of Appeals Eighth Circuit.

July 6, 1965.

Michael Mulroney, Atty., Dept. of Justice, Washington, D. C., made argument for appellant and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Washington, D. C., Lee A. Jackson and Joseph Kovner, Attys., Tax Div., Washington, D. C., and Donald A. Wine, U. S. Atty., Des Moines, Iowa.

Leland C. White, Harlan, Iowa, made argument for appellees and filed brief for appellees, Richard Schroeder and Jacqueline L. Schroeder.

Bert B. Rand, Washington, D. C., entered his appearance for Harry and Amanda Schroeder.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

The issue in this case is whether three tracts of Iowa farm land are owned by Harry Schroeder and should be subjected to the payment of delinquent federal taxes. The district court found that such property belonged to Richard Schroeder, Harry's son, and dismissed the Government's cause of action as to this phase of the case. From this judgment the Government has appealed. We affirm.

The pertinent background facts have been established by administrative and judicial proceedings and are, of course, not in dispute.

By letter dated July 3, 1951, the Commissioner of Internal Revenue notified Harry Schroeder and his wife, Amanda, that determination of their income tax liability for the taxable years ended December 31 in each of the years 1942, 1944, 1945, 1946 and 1947 disclosed a deficiency of $679,545.55 plus fraud and delinquent penalties totaling $383,990.82. The Schroeders unsuccessfully sought a redetermination of the deficiencies and penalties in the Tax Court. Schroeder v. Commissioner, P-H Memo T.C. ¶ 57,162 (1957), affirmed 291 F.2d 649 (8 Cir. 1961), cert. denied 368 U.S. 985, 82 S.Ct. 598, 7 L.Ed.2d 523 (1962).

In December, 1959, notices of tax liens were filed in different counties in the State of Iowa. On April 10, 1961, the district court appointed a receiver to take and have complete and exclusive control and custody of all assets of Harry and Amanda Schroeder. In March, 1961, the Government filed this action in the United States District Court seeking, among other relief, a foreclosure of the tax liens and the sale of certain real estate alleged to be the property of either Harry Schroeder or Harry and his wife, Amanda. In the complaint, as amended, the Government averred in substance that a number of parcels of real estate, legal title to which was in other individuals, were in truth and in fact the property of Harry Schroeder and were subject to the Government's liens.

Apparently there were two trials, one involving three parcels of real estate and another involving five parcels. Two judgments were entered. On June 10, 1963, the court filed findings of fact and conclusions of law and entered a final judgment in regard to two farms and residence property situated in Tabor, Iowa. Specifically, the court found that the Randolph Farm, title to which was in Mark A. Kilpatrick, grandson of the Schroeders, and the County Line Farm, title to which was in Harry Paul Kilpatrick, another grandson, were subject to the liens of the Government but that the Tabor, Iowa property was not subject to the liens. See United States v. Schroeder, 63–2 USTC ¶ 9608. No appeal was taken from that judgment. Thereafter, a trial ensued involving the three farms at issue in this appeal and two other tracts, title to which was in Bert Colwell. On April 8, 1964, the court filed its memorandum opinion in which it found that three of the tracts which had been previously conveyed to Richard Schroeder were not subject to the tax liens. The court further determined, however, that the deed to Bert Colwell conveying two tracts was an instrument of security for indebtedness of Harry Schroeder to Colwell and decreed that Colwell was entitled to a lien on the proceeds derived from the sale of the Colwell tracts. The court's opinion is reported at 242 F.Supp. 430. As stated, the Government appealed from that portion of the judgment decreeing Richard to be the owner of the three farms.

Thus, we have a situation where the Government succeeded in having the tax liens impressed upon certain tracts of real estate even though other parties held legal title thereto, and failed in its effort to subject the three tracts here involved to the tax liens.

The three subject tracts are referred to and designated as the "Allen Farm,"

located in Mills County, Iowa; the "Adams County Farm," located in Adams County, Iowa, and the "Treynor Farm," located in Pottawattamie County, Iowa.

The Allen Farm, containing 40 acres, was conveyed by Ed Allen to Richard H. Schroeder by deed dated November 18, 1947. A small tract, containing 1.56 acres, also a part of the Allen Farm, was conveyed to Richard by deed dated July 19, 1948.

The Adams County Farm, containing 517 acres, was conveyed by Adolph A. Claussen and wife to Richard Schroeder by deed dated March 8, 1951.

The Treynor Farm was conveyed by Edd Schroeder (a brother of Harry) by deed dated March 23, 1951. In the premises of this deed Harry Schroeder was designated as the grantee; however, the habendum clause contains the name "Richard Harry Schroeder." On November 28, 1951, Harry and Amanda executed a deed, in which Richard Schroeder was named as grantee. This deed recites that it was the intent of the grantors to correct error in the name of the grantee in the deed from Edd Schroeder and wife to Harry. All of the aforementioned deeds were promptly filed for record.

Before reaching the contentions of the Government and as a prelude, we recognize the applicability of §§ 6321, 6322 and 7403 of the Internal Revenue Code of 1954.[1] We also agree with the Government that state, not federal, law creates the property and property rights to which the tax lien attaches. United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Cf. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958).

The Government advances three major contentions: (1) the district court erred in holding that Harry Schroeder made a gift of the three tracts of land to his son, Richard, so that Harry had no property or rights to property in such land which could be subject to payment of his tax liability; (2) the district court erred in failing to hold that a resulting trust arose in favor of the taxpayer Harry at the time the properties were conveyed to Richard; (3) assuming there was a transfer of the properties to Richard the court erred in failing to hold that the transfer was a fraudulent conveyance as to taxpayer's creditor, the United States.

*Gift Issue.*

Although there was no explicit finding by the district court that Richard acquired the subject farms as gifts from his father, this finding is implicit in the opinion considered in its entirety. Moreover, the Government's approach here is that "the district court believed that the taxpayer [Harry] made gifts of the three tracts to Richard." From this starting point the Government urges that "as a matter of Iowa law there were no gifts of the properties."

To support its thesis, the Government relies upon general principles of law which have been announced in Iowa gift cases, namely, (1) to constitute a gift of land there must be an intent to make a gift, an intent to deliver the subject matter of the gift, and actual delivery of the subject matter. Three of the four cases appearing in boldface type cited to this proposition, Hagerty v. Hagerty, 186 Iowa 1329, 172 N.W. 259; Runnels v. Anderson, 186 Iowa 1370, 173 N.W. 91; Oliver v. Perry, 131 Iowa 654, 109 N.W. 183, involved asserted *oral* gifts of land, and in the fourth case, Lathrop v. Knoop, 202 Iowa 621, 210 N.W. 764, the deed was never delivered or recorded during the grantor's lifetime. (2) The donor

---

1. § 6321 provides that if any person fails to pay any tax after demand, the amount of the tax that is due shall be a lien in favor of the United States upon all property of such person.

§ 6322 provides that unless another date is specifically fixed by law the lien shall arise at the time the assessment is made.

§ 7403 provides, inter alia, for the filing of an action in a district court of the United States to enforce the lien of the United States.

of a gift of land must transfer all right and domain over the *res* of the gift. Again, Hagerty v. Hagerty and Oliver v. Perry, supra, are cited together with Creveling v. Brown, 147 Iowa 45, 125 N.W. 807, and Dolph v. Wortman, 191 Iowa 1364, 183 N.W. 814, both non-delivery and non-recording of deed cases. (3) The giving of a deed to land is merely evidence of an intent to deliver; it is not conclusive of delivery. Cited to this proposition are Dolph v. Wortman; Lathrop v. Knoop; Creveling v. Brown, supra.

Recognized essential elements common to gifts inter vivos are (a) a clear and unmistakable intention on the part of the donor to make a gift of his property, 24 Am.Jur., Gifts, § 21; 38 C.J.S. Gifts § 15; (b) the gift must be fully executed—intention to transfer title—an actual or constructive delivery by the donor, and an acceptance by donee, 24 Am.Jur., Gifts, § 22; 38 C.J.S. Gifts §§ 18, 29.

Also pertinent here is the settled and salutary principle that where there is a close relationship between the party who pays the purchase price and one who takes the title, such as husband and wife or father and son, there is a presumption that a gift was intended. Luckhart v. Luckhart, 120 Iowa 248, 94 N.W. 461; McGinnis v. McGinnis, 159 Iowa 394, 139 N.W. 466, 467; Olsen v. Best, 167 Nebr. 198, 92 N.W.2d 531, 533 (1958); Bird v. Stein, 258 F.2d 168, 176 (5 Cir. 1958), cert. denied 359 U.S. 926, 79 S.Ct. 608, 3 L.Ed.2d 628 (1959). The rule is succinctly stated in Bogert, Trusts & Trustees, § 460 (2d ed. 1964), as follows:

> "Another group of alleged purchase-money trust cases where close relationship is of much importance is that where a *parent and child* are involved. Here the courts laid down the rule that, if a father pays the consideration and has the convey-ance run to his child, there is a rebuttable presumption of a gift. * * The basis for the presumption is the common practice of fathers to make gifts to their children, either on account of the legal duty to support which operates during the minority of the child, or because of love and affection * * *."

Recognizing (1) that title to real estate may be conveyed by gift, oral or written, (2) that the deeds to Richard were delivered and recorded, and (3) that there was direct evidence that a gift was intended,[2] the Government nonetheless takes the position that the record shows "that while a gift may have been intended, there was no expressed intent to make a *present* gift of the farms. Rather, Richard was to get the farms in the future when he was financially able to run them;" that "[m]ore important than what the taxpayer [Harry] and Richard said, however, is what they did—or what the taxpayer did not do." The Government then labors at some length in demonstrating that Harry exercised dominion over and control of the three farms after they had been transferred to Richard, a fact which is not in dispute. But there are other relevant and cogent circumstances.

As we have seen, the Allen Farm was acquired by Richard in November, 1947. Richard was then 17 years old. The uncontradicted evidence shows that Harry gave the amount of the purchase price, approximately $2,350, to Richard, who deposited it in a bank and issued his check to the grantors. The consideration for the Adams Farm, acquired by Richard in 1951, was $57,500. This farm was conveyed subject to a mortgage for $35,200. Approximately $12,300 was paid by Harry. The Government concedes that of the remaining $10,000 Richard furnished "about $5,700.00 * * * proceeds of saving bonds given to Rich-

2. Harry testified the gifts were motivated because "Bud [Richard] always stayed home and worked and he never took any part in high school activities. Just come home from school and go to work from the time he was about twelve years old and I figured he was entitled to something. * * * That's the reason I gave him the money to buy those places with and put them in his name."

ard in prior years."[3] There is, however, evidence from which the district court could and did find that Richard furnished and paid the entire $10,000. The Treynor Farm, also acquired by Richard in 1951, had been in the Schroeder family for two prior generations. Richard's grandfather conveyed this farm to Edd Schroeder, a brother of Harry, who conveyed the same subject to a mortgage securing an unpaid balance of about $19,000. The remainder of the purchase price, over $10,000, was paid by Harry to Edd's creditors.

To be sure, as the Government asserts, Harry operated the three farms, derived the income from the farming operations, made the payments on the two mortgages, kept the buildings in repair, and paid the taxes and insurance premiums. This was done pursuant to an "agreement or understanding" between Harry and Richard.[4] Richard was a member of the armed services for a period of approximately two years beginning in October, 1951. When he returned home "[H]e didn't have any money, and the cattle—we were all losing money at that time—and he didn't have any money so we kept going until after he got ahold of a little money so he could go on it himself."

The financial status of Harry in 1947 and in 1951 is pertinent to the gift issue. During a pre-trial conference, a colloquy occurred between the attorney for Richard and his wife, and the attorney for the Tax Division, Department of Justice, in regard to Harry's solvency in 1947

and in 1951. The attorney representing the Tax Division, in response to an inquiry, stated:

"We will not attempt to show insolvency in the strict sense. We may show the financial condition of Mr. Schroeder at the time of the transfer of the property, but we're not in a position to show that in the years * * * 1947 and '48, particularly * * * down through '51, that he was actually insolvent in the sense that his debts exceeded his assets. However, there may be evidence that he was close to the line in '52 and '53. We're not making any attempt to show insolvency of any of those years as such through expert competent testimony along that line."

Additionally, an internal revenue agent who began an examination of Harry and Amanda's income tax returns in November, 1947, testified that in 1947 their net worth was in excess of $1,000,000. Harry Schroeder testified without objection that in 1951 his net worth was "well over a million dollars." The district court considered and discussed the solvency question at some length and stated in part:

"The solvency or insolvency which is material is that which existed at the time of the transfer * * *. There is proof that in 1947 and in 1951, Harry Schroeder could have paid his debts and there is no evidence to the contrary. The fact that he is now insolvent is not suffi-

---

3. In a footnote the Government suggests it would be appropriate to permit Richard to participate in the net proceeds of the sale of the property to the extent of his contribution to the purchase in the ratio his contribution bears to the total purchase price.

4. Harry's testimony in this regard was:
   "Q. Then I believe you also testified that thereafter you operated the farms and paid the taxes and the mortgage, interest, and so forth?
   "A. And the payments.
   "Q. Was there any reason why or did you have any agreement or understanding with your son as to that?

"A. Yeah,—he had to go to the Army, so I just kept running them like that and I paid the down payment, the land payments and the interest and the taxes and took the crops off of them, and if I made money, I made money, and, if I didn't, I didn't."
Richard testified that during the time he was in service his father "was going to take care of them * * * and treat them as his own farms. He put the crops in and he took the crops out and received the money for them and he paid the mortgages off on them."

cient to hold otherwise. Neither was it shown that Harry Schroeder was contemplating involvency. The evidence adduced by the defendants inferred that he was not contemplating insolvency." 242 F.Supp. 435.

The picture portrayed by this record is understandable. Richard was a dutiful and obedient son who labored, apparently without pay, on his parents' farms from an early age until he responded to the call of his country. He was the natural object of his father's bounty. Under the conditions existing in 1947 and 1951, Harry was within his rights in disposing of his property in accordance with the dictates of his conscience. The question of intent—whether Harry Schroeder intended to make a *present* gift of the farms was one of fact for the district court to resolve. Stroup v. Bridger, 124 Iowa 401, 100 N.W. 113, 115; In re Wearin's Estate, 167 Iowa 535, 149 N.W. 621, 622; Yagge v. Tyler, 225 Iowa 352, 280 N.W. 559, 562. A fair appraisal of the record convinces us that the Government wholly failed to sustain the burden of rebutting the presumption of a gift—a presumption which must be indulged on these facts; and that the court's findings on this issue are not clearly erroneous.

*Resulting Trust Theory.*

Here, the Government asserts that "a somewhat more technical argument supports" its position, the gist and core of such argument being that there was "clear and certain" evidence to show an intent not to convey a beneficial interest in the properties to Richard.

We are familiar with the essential elements of a resulting trust. They need not be stated here. The determination that valid gifts were consummated at the time the deeds were executed and delivered effectively forecloses and concludes the resulting trust theory.

*Fraudulent Conveyance Issue.*

This is termed by the Government as "a second technical argument" to support its position.

Premising its contention on the rule that "a voluntary conveyance, even to

children * * * is constructively fraudulent as to an existing creditor, unless the grantor had remaining after the conveyance sufficient property to satisfy the claims of his creditors * * *," Campbell v. Campbell, 129 Iowa 317, 105 N.W. 583, 584, the Government challenges the district court's finding of solvency in 1947—and in 1951. This facet of the case has heretofore been discussed.

We subscribe to the adage "Be just before you are generous," but there is no basis in fact for its application. The Government is in the dilemma of having no record support for its position. Indeed, its efforts in this direction are far from impressive. Apart from the concession of Government's counsel in the pre-trial conference set out, supra, it appears beyond doubt that Harry and Amanda Schroeder's net worth in 1947 was in excess of $1,000,000. And the appellees' evidence, in the form of Harry's testimony and supporting documentary evidence, affords adequate proof to support the court's finding that Harry was also solvent in the year 1951.

In summary, we are persuaded that the court's decision is correct. Accordingly, the judgment appealed from is affirmed.