March 18, 1991

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

BERNARD S. GUERRERO,  )   APPEAL NO. 90-018
                      )   CIVIL ACTION NO. 89-569
    Plaintiff/Appellee, )
                      )
    vs.               )   OPINION
                      )
BERNADITA A. GUERRERO, et al., )
                      )
    Defendants/Appellants. )
_____)

Argued October 5, 1990

Counsel for Defendants/Appellants:  Jay H. Sorensen
                                    P. O. Box 1184
                                    Saipan, MP  96950

Counsel for Plaintiff/Appellee:     Kenneth L. Govendo
                                    P. O. Box 2377
                                    Saipan, MP  96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

FACTS

This is an appeal from a judgment of the trial court quieting title in plaintiff, Bernard S. Guerrero (hereafter Bernard), and determining that defendant, Bernadita A. Guerrero (hereafter Bernadita), has no interest in Lot 008 D 06 , Garapan, Saipan, consisting of 613 square meters (hereafter the lot).

Bernard's father acquired the lot in 1955 from the Trust Territory Government through a land exchange.

Bernard and Bernadita were married on December 30, 1972.

In the summer of 1980, the parties moved onto the lot and lived there until late 1983. Bernard's brother was previously staying on the lot.

Bernard was first told by his father that the Garapan lot was to be his in 1978. His brother was living on the lot between 1974 and 1980. His brother testified that he moved off the lot so Bernard could move on to it. He moved off because his father told him that the lot was Bernard's.

In December 1981, Bernard's mother died. The family incurred funeral expenses, which Bernard's father could not pay.

About three months after the mother's death, Bernard attempted to borrow $16,000 from the Bank of Guam to pay the family's funeral expenses, and to purchase a pickup truck for his father. When asked by the bank what collateral he had to offer, he told the Bank that he owned the lot in Garapan. However, he noted that he had no evidence of title. He stated that he was living on the lot and that his father had given it to him. The bank told him to go to the bank's attorney who would prepare the documents necessary to obtain the loan.

The bank's attorney prepared a Warranty Deed of Sale, dated March 8, 1982, from Bernard's father to Bernard. The deed recites that the consideration was $15,000, and other valuable

consideration. It further specifically states that the father does "grant, bargain, sell and convey" the lot to Bernard. The purpose of the deed was to allow Bernard to use the lot as collateral to the bank for his loan. Bernard's father properly executed this deed.

Only Bernard executed a mortgage on the lot to secure the loan. However, both he and Bernadita signed the promissory note.[1]

On March 9, 1982, Bernard and his father executed a hand-written acknowledgment (witnessed by Bernadita) stating that Bernard gave his father the total amount of $15,000, for the purchase of the lot. The note specifically stated that the amount of $4,797 was used to pay the funeral expenses of the family, and the balance given to the father. It also noted that the amount for funeral expenses was to be reimbursed to the father by his children.

In October 1982, the Office of the Land Commission issued a certificate of title to the Garapan lot in Bernard's name only.

Bernadita left Saipan on January 4, 1987, and has been back only once staying about one week.

She initiated divorce proceedings in California in March 1989. At the time of trial of this matter, Bernard was not sure if the divorce had been finalized. Bernadita specifically claimed an

---

[1]A subsequent mortgage to the bank to secure a different loan, dated April 17, 1985, involving the same lot, has both Bernard and Bernadita as the mortgagors.

65

interest in the property in the divorce proceeding.

This action was initiated on May 18, 1989, by the filing of a complaint to quiet title. Since Bernadita was residing in California at the time, Bernard obtained an Order to Appear or Plead on August 24, 1989. Bernadita filed an answer on December 11, 1989, through Douglas Cushnie, her attorney. As a result of Bernard's filing a Memorandum to Set Case for Trial, an order issued on December 28, 1989, setting the trial date for February 22, 1990.

On February 15, 1990, Mr. Cushnie filed an ex parte motion to withdraw as counsel. A hearing was held on February 16. An Order issued on the same day re-setting trial to April 5, 1990, and the motion to withdraw was set for March 14, 1990. Mr. Cushnie was to serve Bernadita with the motion no later than February 23, 1990. The order specifically stated that no further continuance would be allowed.

On April 2, 1990, defendant's present counsel filed a motion to continue trial. It was heard and denied on April 5, 1990. Trial was held on April 6, 1990, and the judgment and Memorandum Opinion were issued on the same day. The notice of appeal was timely filed on May 3, 1990.

## ISSUES PRESENTED

1. Whether the trial court erred in admitting hearsay testimony that Bernard's father intended to give Bernard the lot.

2.   Whether the trial court erred in concluding that Bernard received the lot by gift from his father.

3.   Whether the trial court abused its discretion in denying Bernadita's motion for a continuance.

## STANDARD OF REVIEW

The first issue involves the admission of evidence and is subject to the abuse of discretion standard. _Commonwealth v. Delos Santos_, 3 CR 661 (D.N.M.I. App. Div. 1939).

The second issue involves mixed questions of law and fact. As such, it is subject to de novo review. _Trinity Ventures, Inc. v. Guerrero_, No. 89-001, slip op. at 5-6 (N.M.I. January 12, 1990).

The third issue is subject to the abuse of discretion standard since it involves a denial of a motion for a continuance. _Commonwealth v. Bordallo_, No. 90-003, slip op. at 10 (N.M.I. June 8, 1990).

## ANALYSIS

### I.   Admission of Hearsay Testimony

The trial court did not abuse its discretion in admitting the hearsay evidence.   Its application of Rule 803(20)[2], Commonwealth

---

[2]Com.R.Evid.803(20) provides:

(20)   Reputation concerning boundaries or general history.   Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community and reputation as to events or general history important to the community or State or nation in which located.

67

Rules of Evidence, was correct.

The trial court was incorrect in applying Rule 803(23) as an additional basis to admit the hearsay statement. This hearsay exception deals with judgments. This case does not involve a judgment of personal, family or general history, or boundaries.

In Sablan v. Iginoef, 3 CR 860, 863, n.4 (Super. Ct. 1989), aff'd, No. 89-008 (N.M.I. June 7, 1990), the trial court noted that our courts have relied on Com.R.Evid. 803(13), (19)[3] and (20) to allow hearsay testimony in proving title to land in the Commonwealth.

In reviewing past reported Commonwealth cases, we found no case explaining the rationale courts have used such hearsay exceptions to prove title to land. We find it important to do so.

Initially, we agree that Com.R.Evid. 803(13), (19), or (20)

---

[3]Com.R.Evid. 803(13) and (19) provide:

(13) Family records. Statements of fact concerning personal or family history contained in family Bibles, genealogies, charts, engraving on rings, inscription on family portraits, engravings on urns, crypts, or tombstones, or the like.

. . .

(19) Reputation concerning personal or family history. Reputation among members of his family by blood, adoption, or marriage, or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of his personal or family history.

68

permits hearsay testimony in proving title to land. Which particular rule, or rules, is to be applied depends on the particular facts of the case.

Both Com.R.Evid. 803(13) and (19) allow hearsay testimony to be introduced if personal or family history is involved. Com.R.Evid. 803(20) allows hearsay testimony if boundaries of or customs affecting lands is involved. Com.R.Evid. 803(13) additionally requires the existence of certain specified family records. Com.R.Evid. 803(19) requires the additional factor of a reputation 1) among family members, 2) among associates, or 3) in the community. Com.R.Evid. 803(20) requires also that the testimony be reputation in the community.

In this particular case, we find that Com.R.Evid. 803(20) applies. Com.R.Evid. 803(13) and (19) are not appropriate and do not apply.

Com.R.Evid. 803(20) requires reputation in a community as to boundaries of or customs affecting lands arising before the controversy. There is no question that the evidence involved arose before the controversy. Although the language of the rule appears to limit the exception to boundaries of or customs affecting lands, it is clear that the exception applies to ownership of lands as well. As stated in 4 D. Louisell and C. Mueller, Federal Evidence § 468 (1980) (hereafter Louisell), "no good purpose would be served to reject reputation evidence offered to prove generally that one person rather than another owned a particular parcel, or that a

69

particular parcel is the responsibility of a particular person."

In addition to the rationale provided by Professors Louisell and Mueller, another reason ownership of land can reasonably be included in the term "boundaries of or customs affecting lands" in Com.R.Evid. 803(20) is because of the unique relationship land has in the custom and culture of the Northern Mariana Islands to a family and to the community. As stated in Northern Marianas Constitutional Convention, Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands (1976) (hereafter Analysis)

> Land is one of the principal sources of social stability. It gives root to the pride, confidence and identity as a people that will permit the cooperative action necessary to a successful Commonwealth.
>
> . . .
>
> Land is the basis of family organization in the islands. It traditionally passes from generation to generation creating family identity and contributing to the economic well-being of family members.

Id. at 165. We find no error for a trial court in the Commonwealth to interpret Com.R.Evid. 803(20) as including ownership of land within the term "boundaries of or customs affecting lands."

In addition to the unique relationship land has to a family and community, another reason justifying the use of the hearsay exception is the history of oral conveyances under custom. Before October 28, 1983, oral conveyances of land were permissible in the

70

Commonwealth.[4] As stated in A. Spoehr, <u>Saipan: The Ethnology of a War-Devastated Island</u> at 136 (1954): "Sometimes the 'partido'[sic] is put in writing, but this is not the usual rule. More often it is a verbal transaction." Oral conveyances were not limited to the customary practice of "partida." <u>See</u> <u>Sablan v. Iginoef</u>, 3 CR at 873 ("there was a divestment of ownership . . . by an oral transfer. . . ."); <u>Muna v. Trust Territory</u>, 8 T.T.R. 131, 136 (H.Ct. App.Div. 1980) ("we are dealing with a jurisdiction where transfers of land can be made orally"); <u>Ilisari v. Taroliman</u>, 7 T.T.R. 391, 394 (H.Ct. App.Div. 1976)("a verbal transfer of land is valid. . . .").

Oral conveyances of land, unless later confirmed in writing, must necessarily be proved by oral testimony. Where the grantor has died, hearsay testimony may be the only evidence available. Otherwise, there would be no other way that one could establish oral conveyances.

In this particular case, there is sufficient evidence to find that the reputation of the ownership of the land is derived from the reputation within the the community.

We have the testimony by Bernard and Juan, brothers, of

---

[4]We note that such oral statements for conveyances of land are admissible under such evidentiary rules if made prior to October 28, 1983, the effective date of the NMI Statute of Frauds, 2 CMC §§ 4911-4916. After such date, such oral statements are not admissible under such rules of evidence. The only exception to the Statute of Frauds is "a Partida performed pursuant to custom of the Northern Mariana Islands." 2 CMC § 4916.

ownership of the land, i.e., that the lot was conveyed to Bernard as a gift from his father. It is true that neither of the two witnesses specifically testified that Bernard's ownership was common knowledge among the community. However, we cannot hold that in order to find reputation, a court must hear a witness say that "it is the general opinion within the community, or it is the common knowledge within the community" before the exception is triggered. The effectiveness of the exception should not be dependent on one's use of magic words. The trial court, based on other facts before it, may determine that the hearsay testimony involves reputation in a community. Here, the trial court had those facts.

The trial court, in addition to the testimony of the two witnesses on Bernard's ownership of the lot, also had evidence that the lot originally belonged to Bernard's father, and that Bernard physically stayed on the lot for a number of years. It was reasonable for it to conclude that such testimony relates to reputation in a community.

The admissibility of such evidence is permitted because of the extreme difficulty in producing better evidence of oral conveyances. See 4 Louisell § 468. The consideration of such testimony goes to the weight the trial court would give to such evidence. The court stated that, because of the inability to cross-examine an unavailable declarant, it always looks at such statements "with a little bit of a jaundice eye. . . ." Tr. at 19.

As stated in <u>Michelson v. United States</u>, 335 U.S. 469, 482, 69 S.Ct. 213, 221 (1948):

> Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.

## II.   Conveyance by Gift

The trial court did not err in concluding that the conveyance by the father to Bernard was a gift.   In order for the court to conclude that a gift of the lot was accomplished, it had to first make two (2) findings.   It had to find that Bernard's father had the intent to orally convey the lot by gift.   It then had to find that the lot was delivered to, and accepted by, Bernard.   See <u>United States v. Schroeder</u>, 348 F.2d 223 (8th Cir. 1965).

The facts found by the trial court to support its conclusion that the requisite donative intent existed were:

1.   The lot was previously owned by Bernard's father;

2.   The statements to Bernard in 1978, and to Juan in 1980 that the lot was to be Bernard's; and

3.   The actual possession and use of the lot by Bernard.

It is uncontested that the lot was delivered to Bernard, and that he accepted it.   Juan testified that he moved off the lot in 1980 because his father told him that the land was for Bernard. Bernard accepted it when he moved onto the lot in 1980 and lived

there until the latter part of 1983. The "inter vivos" gift by oral conveyance was accomplished in 1980.

Pertinent here, also, is the salutary custom that where family land is involved, there is a presumption that a conveyance by a father to a child is by gift. The basis for this presumption is the Chamorro custom of distributing family lands to the children. See Analysis at 165. Although such a presumption is rebuttable, the trial court was not persuaded in this case that it was rebutted.

Bernadita argues that there was no "inter vivos" gift since the later conveyance by deed disputes such a gift and the deed is clear and unambiguous. To be sure, the deed and Defendant's Exhibit B merit consideration to the extent that it bears on the father's intent at the time of the gift in 1980. The trial court did consider such evidence. It found that the deed was required by the bank and it was prepared by the bank's attorneys. It saw the need for the money coincidental with the need to get written evidence of title to be used as collateral to borrow money. Exhibit B was found by the trial court to be a "document primarily for the purpose of recording the fact that the plaintiff paid the funeral expenses which, pursuant to custom, were to be paid in equitable shares by all the children of Mr. Bernardo Ch. Guerrero." Guerrero v. Guerrero, Civil Action No. 89-569, slip op. at 3 (April 6, 1990). This finding is not clearly erroneous.

The trial court considered the above evidence, along with the

74

testimony of Bernard and Juan that a gift was accomplished. It did not find the deed and Exhibit B sufficient to negate the gift in 1980. We agree. Once it is established that an "inter vivos" gift was effectuated at one point in time (in this case 1980), the subsequent contrary acts (i.e., the warranty deed and Exhibit B) do not affect the oral transfer. See Manning v. United States Nat. Bank of Portland, 148 P.2d 255 (Ore. 1944).

### III. Denial of Motion for Continuance

In Commonwealth v. Bordallo, we adopted the four factors stated in U.S. v. 2.61 Acres of Land More Or Less, 791 F.2d 666, 671 (9th Cir. 1985), to be considered in reviewing a denial of a motion for continuance. They are:

1. Movant's diligence in his efforts to ready his defense prior to the date set for hearing;

2. The likelihood that the need for a continuance could have been met if the continuance had been granted;

3. The extent a continuance would have inconvenienced the court and opposing party; and

4. The extent the movant might have suffered harm as a result of the denial.

No one factor is dispositive. We weigh each one to determine whether the denial was arbitrary or unreasonable. However, if appellant cannot show prejudice by the denial, we will not reverse the trial court's ruling.

75

We are not persuaded that Bernadita was diligent in readying herself for trial. She filed her answer to the complaint on December 11, 1989. On December 28, 1989, the trial court ordered that the trial would be on February 22, 1990. A week before the trial date, counsel for Bernadita moved to withdraw as counsel, on a ground known to counsel since the time he filed the answer. Although no order was issued in response to the motion to withdraw, the trial court did issue another order on February 16, 1990, re-setting the trial to April 5, 1990. The order specifically stated that no further continuance would be allowed.

Bernadita knew through counsel that trial was to be held on April 5 and that no further continuance would be granted. She knew this at least a month and a half before April 5. See generally 7 Am.Jur.2d Attorneys at Law §§ 129, 130, 142, 148, and 149 (1980). We cannot condone her lack of diligence. There was more than sufficient time for her to seek other counsel in the matter. It is insufficient to state that she relied on her previous counsel to find substitute counsel for her. There is nothing in the record to show that former counsel agreed to find substitute counsel for Bernadita.

A continuance would have met some of Bernadita's need. It would have given sufficient time to Bernadita's new counsel to take her deposition, or for her to appear personally at trial.

There is nothing in the record to show that Bernard or the trial court would have been greatly inconvenienced by such a

76

continuance.

To be sure, Bernadita has been prejudiced by the denial of her requested continuance. She could not testify on her own behalf as to the issue of whether a gift was intended. However, prejudice caused by her own lack of diligence is not a reasonable excuse.

In weighing all the above factors, we find that the trial court did not abuse its discretion in denying Bernadita's motion for a continuance.

## CONCLUSION

The judgment of the trial court is AFFIRMED.

_____
Jose S. Dela Cruz
Chief Justice

_____
Jesus C. Borja
Associate Justice

77

## DISSENT

VILLAGOMEZ, Justice dissenting:

I will reverse, remand and instruct the trial court to permit Bernadita to present her case. The trial court heard one side of this case -- plaintiff's side, then ruled on important issues without hearing the other side -- defendant's side.

This case involves an issue of land ownership, the importance of which my brethen recognize in their majority opinion[1] and which we recognized in Commonwealth v Bordallo, No. 90-003, slip op. at 10 (N.M.I. June 8, 1990). In Bordallo, we reversed and remanded so that the landowners could present their case fully.

In this appeal, the main issue is whether the trial court erred by concluding, based on the evidence at trial, that Bernardo Ch. Guerrero (father) gave lot 008 B 06 to his son, Bernard S. Guerrero, or whether he sold it to him and his wife, Bernadita.

Plaintiff contends that his father gave him the land and now constitutes his individual property. He testified that his father told him "he's gonna give it to me that property. . . ." His brother, Juan, testified that he moved off the lot in 1980 because his father told him that the land was for Bernard.[2]

Defendant claims that she and Bernard purchased the land from his father, but did not present any evidence because she was in California at the time of trial, was pregnant, had to hire a new

---

[1] See page 8 of the majority opinion above.

[2] See page 11 of the majority opinion above.

78

attorney after her first attorney withdrew as her counsel, and the trial court denied her motion for continuance.

The trial court, without hearing defendant's case, and without the _requisite_ clear, convincing, and satisfactory evidence that Bernardo had a clear, unmistakable, unequivocal and _present_ intention to make a gift of his property to Bernard, concluded that Bernardo did make such a gift.[3] Consequently, the trial court's finding of a gift inter vivos, based on Bernard's and his brother's hearsay testimony, that their father intended to give him the land in the _future_, is clearly erroneous.

The trial court reasoned that the "Warranty Deed of Sale" which states that the father, "in consideration of the sum of Fifteen Thousand Dollars ($15,000.00) . . . does grant, bargain, sell . . . unto Bernard S. Guerrero . . . .", was made only because it was required by the bank. Also, that defendant's Exhibit "B", which acknowledged a "purchase" was primarily for the purpose of recording the fact that plaintiff paid for the funeral expenses. However, the trial court failed to explain why Bernard and Bernadita paid the $15,000.00 to the father as consideration for the land. If they did not purchase the land, then why did they pay $15,000.00 for it?

No one can disagree with my brethen that the trial court's denial of Bernadita's motion for continuance prejudiced her. I

---

[3] See 38 Am.Jur. 2d _Gifts_ §§ 17 and 103 (1968); _Reinhardt v. Fleming_, 18 Wash. 2d 637, 140 P.2d 504, 505 (1943); _Detra v. Bartoletti_, 433 P.2d 485, 489 (Mont. 1967).

agree with them that a continuance would have met some of Bernadita's needs. And I further agree that neither the court nor the plaintiff would have been inconvenienced by such a continuance. Consequently, I find that the trial court abused its discretion in denying the defendant's motion for continuance.

 

                                               _____
                                              RAMON G. VILLAGOMEZ
                                              Associate Justice